(No. 36972.—

LEONA FREY *et al.*, Appellants, *vs.* MARTHA WUBBENA *et al.*, Appellees.

*Opinion filed Sept. 28, 1962.—Rehearing denied Nov. 29, 1962.*

THOMAS, DAVIS AND KOSTANTACOS, of Rockford, (CHARLES H. DAVIS, and CHARLES S. THOMAS, of counsel,) for appellants.

EATON & LEEMON, of Mt. Carroll, and FEARER & NYE and S. DONALD CROWELL, both of Oregon, for appellees.

Mr. JUSTICE HOUSE delivered the opinion of the court:

This cause originated as an action to partition real estate. The complaint was filed by plaintiffs, Leona Frey

and Rosanna Dietmeier, daughters by a prior marriage of Herman E. Wubbena, against Martha Wubbena, Herman's widow, and the executor of his estate. The widow filed a counterclaim to determine the rights and interests of the parties in certain securities, accounts and notes. An amicable agreement for sale of the real estate was reached, and it was stipulated that the issues were limited to ownership of such other assets. The trial court entered a decree finding that certain United States savings bonds belonged to plaintiffs, but that all other items were property of the estate and directed that they be assigned to the executor. Upon appeal to the Appellate Court, Second District, the decree was affirmed. (32 Ill. App. 2d 374.) We granted leave to appeal.

Herman and Martha were married on February 11, 1941. They lived together until his death on August 31, 1957, except for about six weeks early in 1944 when she left him and instituted a separate maintenance action. Investments were made by Herman from his sole funds without the knowledge of his wife or daughters. He managed his own affairs and collected rents and income until his death. He left a will by which he gave his wife only so much of his estate as she was entitled to under the statute and the remainder to his daughters.

The assets in question are described in the opinion of the Appellate Court and need not be again detailed here. They consisted of corporate stocks, savings accounts in various banks and savings and loan associations, checking accounts, bank certificates of deposit, notes, and a certificate evidencing an interest in an elevator partnership. Stocks were registered on the books of the several corporations in the name of Herman E. Wubbena and one or the other of his daughters as joint tenants. Checking and savings accounts were opened in the name of Herman and his two daughters in joint tenancy. The agreements with the depositaries were signed by Herman and his daughters. Two

certificates of deposit were purchased payable to the father and two daughters, and $500 was placed in an investment trust in the name of each daughter. Loans were made to individuals and notes taken as evidence thereof in their three names as joint tenants, and another note was made payable only to the two daughters. He also issued a certificate in a partnership in which he was a ¼ owner declaring that interest belonged to him and his two daughters "jointly or either survivor."

This case involves a wide variety of personal property interests and brings into sharp focus most of the troublesome problems which the concept of survivorship with respect to personalty has presented to the courts. As was said in *In re Estate of Schneider,* 6 Ill.2d 180, the relationships contemplated "do not fit readily into common-law categories." Thus the unities which characterize the common-law joint tenancy, the notion of an undivided moiety in each joint tenant, and the difficulties of applying the common-law concept of joint tenancy to a fluctuating *res,* prevent the traditional joint tenancy estate from providing a logical solution. (See Mr. Justice Thompson's dissents in *Illinois Trust and Savings Bank* v. *VanVlack,* 310 Ill. 185, and *Reder* v. *Reder,* 312 Ill. 209.) We are faced with the further problem of fitting the foot of modern day use and understanding of gifts of intangible personal property through survivorship arrangements into the rigid shoe of common-law principles.

However troublesome the strict application of these common-law principles may be, the concept of survivorship with respect to personal property has grown until it has become an established fact of present day life. Joint bank and savings and loan accounts, with the balances payable to survivors, are widely used. Government savings bonds commonly contain survivorship provisions. Many stock certificates have been and are being issued daily in the names

of two or more persons as joint tenants with rights of survivorship and issuing corporations and their transfer agents are continually acting in reliance upon the effectiveness of the survivorship provisions. The legislature has recognized the realities of this situation by enacting statutory provisions (hereafter more particularly referred to) relative to joint bank accounts, joint accounts in savings and loan associations, and corporate stocks and bonds or other evidences of indebtedness in the names of two or more persons as joint tenants with right of survivorship.

In 1953, when the common-law requirement with respect to the four unities in the case of a joint tenancy in real estate was relaxed by the statutory provision that an estate with all the effects of a common-law joint tenancy could be created through a conveyance from a grantor directly to himself and another, without the intervention of a third part, (Ill. Rev. Stat. 1961, chap. 76, par. 1b,) the legislature passed a similar enactment relative to transfers of tangible or intangible personal property. (Ill. Rev. Stat. 1961, chap. 76, par. 2.1.) Public policy would seem to require the adoption by the courts of a more liberal and practical view of these common transactions. With these preliminary observations in mind, we proceed to consider the several categories of securities here involved.

Section 2(a) of the statute on joint rights and obligations, (Ill. Rev. Stat. 1961, chap. 76, par. 2(a),) expressly provides that "When a deposit in any bank * * * has been made or shall hereafter be made in the names of two or more persons payable to them when the account is opened or thereafter, such deposit or any part thereof or any interest or dividend thereon may be paid to any one of said persons whether the other or others be living or not, and when an agreement permitting such payment is signed by all said persons at the time the account is opened or thereafter the receipt of acquittance of the person so paid shall be valid and sufficient discharge from all parties to the bank for

any payments so made." This statute was enacted in 1919, and while there have been some amendments, the basic provisions have remained in substance the same.

It has been suggested that this enactment does no more than protect the bank. That point was made in the dissent in the *Van Vlack* case but the majority opinion there construed the statute as having a broader application in that it also provided a statutory method by which a right of survivorship could be created as between the parties themselves. The view of the majority was later reaffirmed in *In re Estate of Wilson*, 404 Ill. 207, in the following language, at page 217: "The joint contract with the bank was signed by both Dr. and Mrs. Wilson, and was in accord with the requirement of the statute, and in addition bore thereon the words: 'as joint tenants with the right of survivorship and not as tenants in common.' This, under many authorities, constituted an agreement between the bank and the depositors by which the survivor took title by contract and not by gift at death of either. Under this statute, before amendment, when the language was not substantially different, we have held such deposit was properly paid to the survivor. (*Illinois Trust and Savings Bank* v. *VanVlack*, 310 Ill. 185; *Erwin* v. *Felter*, 283 Ill. 36; *Reder* v. *Reder*, 312 Ill. 209.) No occasion arises to elaborate the reasons given in those cases."

The decisions support the view that the legislature has made ample provision for survivorship in the case of joint accounts in Illinois banks and has prescribed the manner in which the parties may accomplish that end. A careful study of the first portion of proviso (a) of section 2 would seem to indicate that it is broad enough to authorize creation of joint tenancy in bank accounts by issuing a passbook in the names of the depositors as joint tenants without the execution of an agreement signed by the parties in accordance with the latter portion of the proviso. However, it was held in *Doubler* v. *Doubler*, 412 Ill. 597, that it is necessary that such an agreement be signed by the parties in order

to create rights of survivorship in the deposit. There has been no material change in the statute since *Doubler* and that decision will not now be disturbed.

Section 4—10 of the Illinois Savings and Loan Act, (Ill. Rev. Stat. 1961, chap. 32, par. 770,) which became effective July 5, 1955, contains broad and comprehensive provisions for the creation of rights of survivorship in the case of savings and loan association capital accounts, and makes the signing of an agreement among the parties mandatory. Prior to its enactment statutory authority to create a joint savings and loan account with right of survivorship was to be found in a special act relating to such associations, (Ill. Rev. Stat. 1939, chap. 32, par. 255f,) as well as in section 2(b) of the statute on joint rights and obligations. (Ill. Rev. Stat. 1951, chap. 76, par. 2(b).) The latter paragraph (b) extended to evidences "of interest" issued by an "association" in the names of two or more persons as joint tenants with rights of survivorship, and consequently was broad enough to apply to savings and loan accounts. In 1953, paragraph (c) of said section 2 was amended to make express reference to "state chartered savings and loan associations, [and] federal savings and loan associations." Statutory authority to create joint savings and loan association accounts is now afforded by both the act relating to joint rights and obligations and the Illinois Savings and Loan Act. By the statutory provisions referred to, the legislature has expressly provided for the creation of survivorship accounts in savings and loan associations and has prescribed the method by which such accounts can be set up.

The right to create a joint tenancy in corporate stock is also recognized by section 2 of the statute on joint rights and obligations. (Ill. Rev. Stat. 1961, chap. 76, par. 2.) Paragraph (b) of section 2 authorizes transfer to, or upon the order of, a surviving joint tenant without inquiry or liability. Paragraph (c) of that section first provides all increments, redemptions and the like may be paid or de-

livered to any of the joint tenants, whether the other is living or dead. The latter part of the paragraph contains language similar to paragraph (a) (relating to bank accounts), relative to the discharge of the corporation's liability if an agreement is signed by the parties.

A statutory right of survivorship exists and we think it unnecessary to follow the principles of common-law joint tenancy whether an agreement has been signed by the parties or not. The registration of stock ownership upon the books of the corporation in appropriate statutory language is sufficient to vest legal title, subject to divestment if the circumstances surrounding the transaction warrant it. This view may seem at odds with our approval of the holding in the *Doubler* case that an agreement must be signed by the parties to effectuate survivorship rights in a bank account. Aside from the differences in the several statutory provisions, we think there is ample justification in the very nature of the property. Corporate stock is issued in fixed units of ownership (shares of stock) and remain fixed, whereas a bank account is a fluctuating *res,* subject to daily change in amount by any of the joint owners. Joint tenancy in such an unstable atmosphere as a shifting bank account should be created by contract of the parties detailing their rights and duties under existing statutory authority. Bank accounts are in this respect similar to saving and loan capital accounts, and a joint account in the latter is not recognized by the Illinois Savings and Loan Act unless there is an agreement in writing.

Promissory notes when drawn in appropriate language, are instruments in writing within the meaning of section 2, (Ill. Rev. Stat. 1961, chap. 76, par. 2,) and constitute exceptions to the provision, abolishing joint tenancy in personal property.

What we have said with respect to creation of joint tenancies in intangible personal property in the language of the statutes amounts to a holding that legal (as differenti-

ated from equitable) title is vested in the holders with right of survivorship by force of the statutes, and compliance with the appropriate statutory requirements dispenses with the necessity of applying common-law principles governing creation of joint tenancies. We do not mean to imply that where joint ownership is set up in conformity with the statutory provisions, a court of equity is thereby foreclosed from looking behind the form of the transaction and determining questions of real and beneficial interest as between the parties. In *In re Estate of Schneider,* 6 Ill.2d 180, Schneider, who was the owner of funds in a savings and loan association, established a joint account with one Ralston (who was not related to him) and both of the parties signed an agreement purporting to establish a joint tenancy with right of survivorship. After Schneider's death, his executor claimed the account as a part of Schneider's estate. The executor established by parol evidence that Ralston's name had been used on the account solely for Schneider's convenience so that in case of Schneider's illness Ralston could get funds for him, and that it was never contemplated by the parties that Ralston should have any beneficial interest in the account. Such evidence was held admissible to show the true ownership of the account as between the parties. It was there pointed out, however, that the deposit agreement was sufficient to establish ownership in the survivor by virtue of the contract upon the death of the original owner, in the absence of evidence to the contrary. The opinion further makes it clear that the court was concerned only with the rights of the depositors between themselves and, irrespective of the equities between them, the association would be protected in making payments in accordance with the terms of the deposit agreement.

There is no contention by the daughters that they contributed any funds for the investments in the joint tenancy personalty, but they rely upon the gift theory. There is a presumption that the taking or placing of title by a father

in a child is a gift or advancement, and the burden is upon one questioning the gift to overcome the presumption by clear and convincing proof. (*Moore* v. *Moore,* 9 Ill.2d 556; *Kraft* v. *Kretchman,* 17 Ill.2d 71.) There is a further presumption of acceptance of a gift beneficial to the donee. *Healy* v. *Stevens,* 347 Ill. 202; *Fonda* v. *Miller,* 411 Ill. 74; *Maciaszek* v. *Maciaszek,* 21 Ill.2d 542.

Defendants contend that the placing of title to the various assets in joint tenancy did not create valid *inter vivos* gifts. This is predicated primarily upon the theory that there was lack of donative intent and that the purpose was to use joint tenancy as a device for testamentary disposition. Secondarily, it is asserted that the donor did not part with control over the property and hence there was no irrevocable delivery.

Evidence tending to rebut the presumption of donative intent is meagre. Only four witnesses testified, each called by the plaintiffs. Two were farmers to whom Herman had loaned money. The essence of Herman's statements to them when he took the notes in the three names was that he wanted the money to go to his daughters when he died. Another witness, the secretary-treasurer of one of the savings and loan associations, testified that Herman wanted his daughters "to go on the account with him" so that the proceeds would be paid to his daughters. The only other witness, an employee of the elevator partnership, said that he was fixing it so that the girls would get his interest in the partnership. No testimony was offered as to the circumstances surrounding the placing of the other items in joint tenancy. This evidence, taken in conjunction with the surrounding circumstances as disclosed by the stipulation of facts, is far short of the clear and convincing proof necessary to rebut the presumption of donative intent. We think the record affirmatively shows that the father by his actions intended to make gifts to his daughters through survivorship arrangements. His conversations with the wit-

nesses regarding his desires and intentions did not make the gifts void as testamentary dispositions. As was aptly said in the case of *In re Estate of Mueth,* 33 Ill. App. 2d 449, where similar expressions of intentions were made: "This is the essence of joint tenancy, and if such thoughts of the contingencies make the contract void as testamentary, then there is no such thing as a joint tenancy in a bank account in this state, * * *."

We turn to the question of whether the acts of the intended donor amounted to consummation of his intent to make *inter vivos* gifts. In addition to donative intent, other elements must be present. The donor must part with exclusive dominion and control over the subject of the gift and there must be delivery. The decedent surrendered his exclusive right to the several items when he voluntarily placed ownership in himself and others. The rights of the co-owners were equal to his own and by the transfer of his funds into joint-tenancy obligations he gave up exclusive dominion and control. Each of the co-owners has an equal right to possession of the evidence of title (passbook, note, certificate, *etc.*) and, since they cannot both have manual possession at the same time, possession by one is possession for the benefit of both. (*Illinois Trust and Savings Bank* v. *VanVlack,* 310 Ill. 185.) We think it follows that delivery by the issuer or maker to one of the joint owners is delivery for the benefit of all and satisfies the requirement of delivery where, as here, there is donative intent. Cf. *Maciaszek* v. *Maciaszek,* 21 Ill.2d 542.

The parties have devoted considerable space in the briefs to *Chicago Title and Trust Co.* v. *Ward,* 332 Ill. 126. No question of joint tenancy was presented, but it did involve the delivery of corporate stock which was the subject of a gift. There, a father purchased shares of corporate stock and thereafter delivered the certificates to the corporation for reissue to his daughter who had no knowledge of the transaction. It was held that despite the retention by the

father of the new certificates, the registration of the stock on the books of the corporation was sufficient to effectuate the gift, in the following language: "So far as the question has been considered, this court is committed to the doctrine that a transfer of shares on the books of the corporation passes the legal title to the person named in the stock certificate. The * * * transfer on the books at the instance of the donor being the best evidence of delivery of which the gift is susceptible, no other rule is compatible with the principle of protection of the donee against retraction of a completed gift."

We have read with interest the case of *Shinsaku Nagano* v. *McGrath*, (7th cir.) 187 F.2d 753, which adopts the view that the doctrine of the *Ward* case is no longer the law in Illinois because of the effect of the Uniform Stock Transfer Act, (Ill. Rev. Stat. 1961, chap. 32, par. 416,) which has since been replaced by the Uniform Commercial Code, (Ill. Rev. Stat. 1961, chap. 26, par. 8—309,) effective July 1, 1962. We do not regard the act as being intended to govern a gift situation such as that presented in *Ward* or here.

It is finally contended by the defendants that the creation of the joint tenancies amounted to fraud upon Mrs. Wubbena and was contrary to public policy. As was said in *Hoeffner* v. *Hoeffner*, 389 Ill. 253, 260: "It has long been settled that a husband enjoys the absolute right to dispose of his property during his lifetime, independently of the concurrence and exonerated from the claim of his wife, provided, of course, the transaction is not merely colorable and is free from circumstances of fraud upon the rights of the wife." Defendants concede this to be the law, and concede that when actual fraud is alleged the one alleging it must substantiate the charge by clear and convincing evidence, but attempt to avoid the burden of proof thus placed upon them by advancing the theory that the facts themselves, regardless of the intent of the perpetrator, amount to fraud *per se* for the reason that they violate public policy and good con-

science. This is a novel theory, particularly under the facts before us.

This second wife was well provided for. Herman's entire estate, including the securities in question, was about $229,000. The value of the joint securities is about $78,500, so the amount here actually involved is $26,200, leaving in excess of $150,000. The widow will receive ⅓ of that amount. While the husband was creating joint tenancies for the benefit of his daughters, he was at the same time building up the value of the farm chattels, which were inventoried at $22,850.29. During the same period he took out life insurance policies in favor of his wife with benefits of $9900. The mere fact that he created the joint tenancies after the separation with his wife is not clear and convincing proof of intent to defraud, if it can be said to be proof at all. This claim is wholly untenable.

We apply what has heretofore been said to the various intangible assets which are the subject of this litigation. The savings account in the Ogle County National Bank was carried in the names of Herman E. Wubbena or Leona Frey or Rosanna Dietmeier. This does not indicate an intention to create the right of survivorship nor was there a deposit agreement providing for joint tenancy. The deposit agreements covering the remaining bank checking accounts and the three savings and loan accounts were in apt language to create the rights of survivorship and they should have been held to be the property of the respective survivors. Thirty shares of preferred stock of Quality Milk Company were issued in the names of Herman E. Wubbena or Rosanna Dietmeier and likewise failed to create joint tenancy ownership. All of the remaining stocks were in appropriate language to create joint tenancy and became the property of the surviving joint tenants upon the death of Herman. Certificate of deposit No. 15251 issued by First State Bank of Shannon was issued to Herman E. Wubbena and/or Leona

Frey and/or Rosanna Dietmeier and also failed to create joint tenancy ownership. Certificate of deposit No. 77055 issued by Forreston State Bank was in apt language and should have been held to be the property of the surviving daughters.

The notes of Harvey Wubbena, Harley and Ardis M. Motter, and Cornelius F. and Ethel Hayenga, were payable to Herman and the two plaintiffs in language appropriate to create rights of survivorship and should have been declared the property of the survivors. A note from Aril L. Barton was payable to Herman Wubbena and another was signed by Lillian G. and Helen M. Spratler and was payable to Leona Frey and Rosanna Dietmeier. There was neither loss of dominion and control nor a delivery of the Barton note, and there was no delivery of the Spratler note, and they were properly held to be the property of the estate. Their mere presence in a safety deposit box rented jointly in the names of the decedent and his daughters did not make the contents joint-tenancy assets. There was no proof of delivery of the savings accounts in Investor's Mutual issued to Herman E. Wubbena "for" each of his daughters and the trial court properly held them to be the property of Herman's estate.

The savings account in the Ogle County National Bank, the shares of stock in Quality Milk Company and certificate of deposit No. 15251 should have been declared to be the property of the respective parties designated as owners in equal shares as tenants in common. *Engelbrecht* v. *Engelbrecht,* 323 Ill. 208; *Harvey* v: *United States,* (7th cir.) 185 F.2d 463.

The certificate of interest in the partnership which Herman issued attempting to place it in joint tenancy with his daughters was wholly ineffective under the Uniform Partnership Act. (Il. Rev. Stat. 1961, chap. 106½.) The very nature of a partnership is such that joint tenancy be-

tween one of the partners and a stranger to the partnership would be abhorrent to the act. The interest in the partnership was properly held to be the property of the estate.

The trial court was right in holding the United States savings bonds to be the property of the survivors. This is in conformance with the statute, (Ill. Rev. Stat. 1961, chap. 76, par. 2(d),) as well as Federal regulations. It was recently held in *Free* v. *Bland,* 369 U.S. 663, 8 L. ed. 2d 180, 82 S. Ct. 1089, that if a conflict arises, Federal law prevails over State law. Thus, no issue remains with respect to the government obligations.

For the reasons assigned, the decree of the trial court and the judgment of the Appellate Court, Second District, is affirmed in part and reversed in part, and the cause is remanded to the circuit court of Carroll County, with directions to enter a decree consistent with this opinion.

*Affirmed in part and reversed in part and remanded, with directions.*