Barbara V. Rudolph and Donald Rudolph, Plaintiffs-Appellants, v. Betty R. Gersten and Chicago Title & Trust Co., Trustee, Trust No. 35734, Defendants-Appellees.

Gen. No. 52,218.

First District, First Division.

October 14, 1968.

Rehearing denied November 13, 1968.

253

Howard T. Savage, Arnold D. Goldstein and Elliott L. DuBois, of Chicago (Starke, Anglin, Savage, Frazin, Stewart & May, of counsel), for appellants.

James P. Chapman, of Chicago, for appellees.

MR. JUSTICE MURPHY delivered the opinion of the court.

Plaintiff, Barbara V. Rudolph, daughter of defendant and counterclaimant, Betty R. Gersten, appeals from a decree which (1) dismissed plaintiff's claim for a one-half interest in real estate held in a land trust, or its proceeds; (2) determined that a stock certificate held by plaintiff was a nullity; and (3) on unpaid notes admittedly executed by plaintiff, the decree awarded defendant a judgment against plaintiff for $8,010.71. In sum, plaintiff's contentions on appeal are that the findings of the trial court are contrary to law and against the manifest weight of the evidence.

Considered first is that part of the decree which dealt with the land trust. On September 3, 1952, defendant, Betty R. Gersten, and her husband, Leo L. Gersten, parents of plaintiff, entered into a land trust agreement with the Chicago Title & Trust Company, as trustee, by the terms of which, as owners, they conveyed real estate to the trust company, in trust, with themselves named as beneficiaries, each owning 50% in joint tenancy with the right of survivorship.

Under date of March 14, 1961, defendant and her husband assigned to themselves and to plaintiff, Barbara V. Rudolph, "as joint tenants and not as tenants in common with right of survivorship," all their rights, power, privileges and beneficial interest in the trust. The terms of the assignment included: "It is understood and agreed by the assignee, Barbara V. Rudolph, that the full power to direct the acts of the Trustee, Chicago Title & Trust Co. shall be in Leo L. Gersten and Betty R. Gersten acting jointly, or in the survivor of them in the event of the death of either Leo L. Gersten or Betty R. Gersten." The assignment included an "Acceptance" signed by all three. It stated, "We accept the foregoing assignment subject to all of the provisions of said trust agreement." It is not disputed that Barbara Rudolph did not give any consideration to her parents for the assignment.

Mr. Gersten died on December 20, 1961. At that time there were two parcels of real estate in the trust, from which Mrs. Gersten collected the income following her husband's death. On January 5, 1966, and at the direction of Mrs. Gersten, the trustee conveyed the real estate to a third person, who immediately reconveyed it to the trustee to be held in a new land trust, of which Mrs. Gersten was the sole beneficiary. Thereafter, one parcel was sold, and the sale proceeds were held pursuant to further order of court. Plaintiff commenced the instant action on January 10, 1966.

256

Plaintiff testified that her mother told her many times that "I owned one-half of the real estate and no one could take it from me. These conversations took place when only the two of us were present; my husband might have been there at the time. My husband had begun to manage the property in March of 1961. He and I helped move my father out so that the new tenants could move in. He did not receive any compensation for the management. He nor I never collected any rent,"—her mother collected all the income from real estate since December 20, 1961.

Defendant, Betty R. Gersten, testified that the land trust assignment had been prepared at her direction by an attorney named Leo Ferdinand, who was deceased at the time of trial. On March 14, 1961, at defendant's instruction, Barbara brought the assignment to Mr. Gersten's room at the hospital. At that time defendant said to Barbara, "You know, 'This has nothing to do with you during the lifetime of your father and myself.' And she said, 'Of course.' . . . I never made a statement to my daughter that she owned one half of the real estate involved herein and that no one could take it from her. Her name was on here as what I learned is a contingent beneficiary, because I had the power of direction. I would say yes, I had a conversation with her about this. These conversations took place in her house or my house and there wasn't anyone else present except possibly her husband and probably the children may have been there. I never told her in any of these conversations that she owned one-half of the real estate involved herein and that no one could take it from her." Barbara and Mrs. Gersten signed the assignment on March 14, 1961, and Leo L. Gersten signed it two days later.

As to the land trust assignment, the decree included the following findings:

e. . . . that said assignment amended the power of direction and restricted said power in that said

257

power to direct the acts of the Trustee were limited solely in LEO L. GERSTEN and BETTY R. GERSTEN, acting jointly, or in the survivor of them in the event of the death of either of them and said restriction was placed specifically on the assignee BARBARA V. GERSTEN RUDOLPH only.

f. That said assignment was accepted by the three assignees and that the Trustee acknowledged receipt of the assignment amending the power of direction and acceptance thereof as having been lodged with the Trustee, and that this assignment, having been accepted by the assignees, and consented to by the receipt thereof by the Trustee, effectively amends and limits the power under the original Trust Agreement.

. . .

h. . . . . That from the evidence, it appears that it was never the intention of LEO L. GERSTEN or BETTY R. GERSTEN to convey an irrevocable interest to BARABARA V. GERSTEN RUDOLPH, their daughter, until the time of the death of both LEO L. GERSTEN and BETTY R. GERSTEN. That it further appears that the daughter, the plaintiff herein, always permitted the mother, the defendant herein, to retain all of the income and always permitted the mother to manage, as her own, the property which was held in trust. That the conduct of the parties from the date of the assignment to the time subsequent to the death of the father and up to shortly prior to the filing of this suit evidences the intention that the daughter, BARBARA V. GERSTEN RUDOLPH, never treated said property or the income thereof as her own.

. . .

j. That the assignment was an attempt by the father and mother to avoid probate and was intended as a testamentary disposition of property. . . .

258

k. That the assignment as such was valid to pass a future interest but that the power of direction was retained by both the father and mother, the assignors herein, in that either one or both could effectively take away all rights by directing the Trustee to convey out the property. Said reserved rights were exercised by the mother, the defendant herein.

l. That the power to direct the acts of the Trustee reserved by the assignors could be exercised in any manner the assignors saw fit and that the said power was so exercised by the mother, BETTY R. GERSTEN, when she directed the Trustee to make a conveyance to GROSS and when she obtained a reconveyance from GROSS to a new Trustee wherein she was the sole beneficiary.

m. That the rights of the daughter as a beneficiary were illusory until the death of both parents and not actual because there was never an intention to give any control to the daughter as to the property until the time of death of both the father and mother.

n. That at most, the daughter can claim part of the net rents during the period of time that she was a named beneficiary under the Trust, being from the date of the assignment to the date of the direction to convey out to GROSS, and even this claim is questionable; but to avoid family discord, the Court, in exercising its broad discretionary equitable powers, should allow said claim for the sake of family harmony.

o. That when the assignment was made, it was the intention of the father, LEO L. GERSTEN, to make a testamentary disposition of his property. . . .

p. That the typewritten portion of the assignment of the Trust Agreement . . . supersedes the language of the original printed form of said Trust

259

■■■■■■■■■

Agreement. . . . the Court must conclude that all of the parties to the Trust, namely: the trustee, the assignees and the assignors, were all bound by the amendment as set forth in the assignment and said amended power of direction must prevail.

As to the land trust, the decree (1) dismissed for want of equity plaintiff's claim of interest in the real estate and the proceeds realized from the sale of parts thereof; (2) dismissed plaintiff's claim for the money value of one-half interest in the property; and (3) allowed plaintiff's claim for an accounting for one-half of the net profits from December 20, 1961, being the date of the death of Leo L. Gersten, to January 4, 1966, being the date of the exercise of the power of direction retained by defendant, Betty R. Gersten, which direction was given to the trustee to convey the aforementioned real estate to Gross, and upon which date any interest plaintiff, Betty R. Gersten, had in and under such trust ceased and was terminated forever.

At the outset, we note that defendant states that she has not cross-appealed from that part of the decree which allowed plaintiff's claim for an accounting for one-half of the net income from the trust during the period between the assignment and the exercise of the power of direction by Mrs. Gersten, which terminated the trust. Therefore, the propriety of that part of the decree is not considered.

Plaintiff contends (1) that defendant had the burden of establishing by clear and convincing proof that in the execution of the assignment there was no donative intent on the part of Mr. and Mrs. Gersten. Plaintiff argues that the defendant failed to meet this burden of proof. Plaintiff also contends (2) "the 'bundle of rights' possessed by an Illinois land trust beneficiary is . . . divisible, and authorities in the area of land trusts are in complete agreement, and it is their firm conviction that, when

260

the power of direction is held by less than all of the beneficiaries under a land trust, the holder of the power is acting in a fiduciary capacity for the remaining beneficiaries."

Plaintiff cites no authority in support of the second contention. As to donative intent and the indicia of a valid gift, plaintiff cites Frey v. Wubbena, 26 Ill2d 62, 185 NE2d 850 (1962), where the court said (p 70):

> "There is no contention by the daughters that they contributed any funds for the investments in the joint tenancy personalty, but they rely upon the gift theory. There is a presumption that the taking or placing of title by a father in a child is a gift or advancement, and the burden is upon one questioning the gift to overcome the presumption by clear and convincing proof. . . . There is a further presumption of acceptance of a gift beneficial to the donee."

Plaintiff also cites Houswerth v. Gill, 40 Ill App2d 281, 189 NE2d 409 (1963), where the court said (p 285):

> "Finally, the fact that the plaintiff has been receiving the income from the stocks in question, pursuant to an agreement between the parties does not make the gift any less complete or absolute. It has been frequently held that a gift of stock may occur although the donor reserves the right to receive all the dividends therefrom."

Defendant contends that she and her husband did not part with the exclusive dominion and control of the subject matter of the purported gift, but specifically retained unto themselves the exclusive power to direct the acts of the trustee, and carefully denied to plaintiff the right of control and direction she would have obtained but for the limiting language of the assignment. Therefore, plaintiff failed to prove one of the essential elements of her

case—that the Gerstens had parted with exclusive dominion and control over the subject matter of the gift. Defendant also cites Frey v. Wubbena, 26 Ill2d 62, 185 NE2d 850 where the court said (p 71):

"Defendants contend that the placing of title to the various assets in joint tenancy did not create valid inter vivos gifts. This is predicated primarily upon the theory that there was lack of donative intent and that the purpose was to use joint tenancy as a device for testamentary disposition. Secondarily, it is asserted that the donor did not part with control over the property and hence there was no irrevocable delivery."

And on page 72:

"We turn to the question of whether the acts of the intended donor amounted to consummation of his intent to make inter vivos gifts. In addition to donative intent, other elements must be present. The donor must part with exclusive dominion and control over the subject of the gift and there must be delivery. The decedent surrendered his exclusive right to the several items when he voluntarily placed ownership in himself and others. The rights of the co-owners were equal to his own and by the transfer of his funds into joint tenancy obligations he gave up exclusive dominion and control. Each of the co-owners has an equal right to possession of the evidence of title (passbook, note, certificate, etc.) and, since they cannot both have manual possession at the same time, possession by one is possession for the benefit of both."

Defendant argues that the guidelines set forth in In re Estate of Schneider, 6 Ill2d 180, 127 NE2d 445 (1955), apply here. There it is said (p 187):

■■■■■■■■

" '. . . [T]hat the facts and circumstances surrounding the transaction, and the happenings pertaining to such transaction thereafter, may be inquired into for the purpose of aiding the court in ascertaining the intentions of the parties.'

"To establish a gift, the proof must be clear and convincing, . . . and the *burden is upon the alleged donee to establish the existence of a donative intent.* . . . The decisions of this court relied on by appellant go no further than to indicate that the deposit agreement tends to show a donative intent on the part of the original owner of the funds, and that the intention so manifested, in the absence of contrary evidence, is sufficient to establish ownership in the survivor by virtue of the contract upon the death of the original owner. The form of the agreement, however, is not conclusive as to the intention of the depositors between themselves." [Emphasis supplied.]

Defendant further asserts that in addition to the limiting terms of the assignment, which carried an "acceptance" of the "foregoing assignment," signed by all three, Mrs. Gersten testified directly that she told her daughter, "This [assignment] has nothing to do with you during the lifetime of your father and myself," to which Mrs. Rudolph replied, "Of course." Defendant asserts that this testimony stands uncontradicted in the record.

Defendant's authorities also include Scott on Trusts, Vol IV, 3d ed (1967), § 330, p 2595, where it is said:

"Where a trust is created inter vivos, the question often arises whether the settlor can revoke the trust. Where by the terms of the trust he has reserved a power of revocation, he can revoke the trust in the manner in which and to the extent to which he has reserved such a power."

Also, at page 2597:

"The intention to reserve a power of revocation need not be manifested by an express provision to that effect; it can be indicated by the use of language from which it can be inferred."

See, also, In re Estate of Petralia, 32 Ill2d 134, 204 NE2d 1 (1965), and Schwinn v. Northern Trust Co., 75 Ill App2d 88, 220 NE2d 867 (1966).

 We conclude that it was the initial burden of plaintiff, by clear and convincing evidence, to show "a donative intent on the part of the original owners" of the land trust to give her a present irrevocable interest in the trust. Plaintiff did not meet this burden. The assignment expressly stated that "it is understood and agreed by the assignee, Barbara V. Rudolph, that the full power to direct the acts of the Trustee . . . shall be in Leo L. Gersten and Betty R. Gersten acting jointly, or in the survivor of them . . . ." Plaintiff's testimony that the assignment did not mean what it said was not sufficient to show, "by clear and convincing evidence," the required element of "donative intent," to give Barbara a present irrevocable interest in the land trust. By retaining the exclusive power to direct all acts of the trustee to the exclusion of their daughter, the Gerstens retained the power to defeat plaintiff's interest in the trust while either of them was alive, and they never parted with the "exclusive dominion and control" of the trust or the trust res. We hold the findings and decree of the trial court were supported by the manifest weight of the evidence, and the assignment "was intended as a testamentary disposition of property."

Considered next are the provisions of the decree which dealt with the counterclaims of defendant against plaintiff, based on alleged loans and a stock certificate which Mrs. Gersten alleged was placed in the name of plaintiff as a convenience.

264

In 1958, Mr. and Mrs. Gersten acquired all (50) of the outstanding shares of common stock of the Lombard Heights Currency Exchange, Inc. The corporation issued certificate #2 for 25 shares to Leo L. Gersten and certificate #3 for 25 shares to Betty R. Gersten. The certificates bore the signature of Leo L. Gersten as president and Betty R. Gersten as secretary of the corporation.

On the reverse side of certificate #2 (Leo Gersten's certificate), the assignment portion was completed in script, assigning the 25 shares to Barbara Rudolph under date of November 20, 1961, and had the signature of "Leo Gersten." Mrs. Gersten, as counterclaimant, testified that the front side of this certificate was signed by her husband Leo on October 31, 1958, the date it bears. However, she stated that the assignment on the reverse side was not signed by her husband; she had signed her husband's name on the reverse side of the certificate on December 30, 1961, ten days after her husband's death, on the advice of her family attorney, Leo Ferdinand, who had said "that the way to avoid probate court and to save on inheritance tax would be to predate this and sign this." She testified that this conversation and signing occurred in the lawyer's office in the presence of Barbara, and the assignment was not intended to be a gift.

Mrs. Gersten also testified that certificate #4 of the corporation, for the 25 shares purportedly issued to Barbara Rudolph on November 20, 1961, and related corporate documents apparently signed by her husband on the same date, were not signed on November 20, 1961, but were prepared on December 30, 1961, by the family attorney in his office and in the presence of Barbara Rudolph and signed on that date at the attorney's direction.

Mrs. Gersten further testified that she and her husband, Leo, were in Rochester, Minnesota, where he was hospitalized from November 14, 1961, through November

265

23, 1961, and she produced a paid hotel bill which covered that period.

Barbara Rudolph testified that stock certificate #4 was given to her in December or the end of November and represented 25 shares that belonged to her father. She said, "I don't think I saw certificate No. 2 [her father's certificate], and I have no knowledge as to whether it was ever cancelled, transferred or signed or anything. I've not received any income statement from the corporation since 1961. I've not received any notices of any shareholders' meeting, and I've not signed any corporate minutes to my knowledge. I've not signed a Federal income tax return, nor have I received any dividends. . . . I did not give any money or property for this particular certificate. I believe that my mother, Mrs. Gersten, Mr. Ferdinand and I were present when this certificate was signed. I don't think that this certificate was signed after my father's death. I am sure it was signed approximately November 20, 1961. I am sure it was signed before he died in Mr. Ferdinand's office . . . . My father said to me that he wanted me to have his 25 shares. I can't tell you the exact date he said that."

As to the stock certificate transaction, the decree found:

> s. That there was a conflict in the testimony as to the date of the execution of the stock certificate. . . . The defendant denied that her husband signed the stock certificate but testified that her husband's name was affixed to it after his death. The defendant offered a signature of her husband for comparison purposes. The plaintiff did not offer a signature of her father for comparison and plaintiff did not deny the signature offered in evidence by the defendant of her husband for the purposes of comparison. Accordingly, the signature offered by the defendant as the signature of the husband must be taken as true and valid. In comparing the signature of the hus-

band on the document containing the admittedly true signature with the signature on the stock certificate, the Court finds that they are different and said signatures are not one and the same signatures. That there was additional corroborative and undisputed evidence offered by the defendant in the exhibit of the paid hotel bill covering the period from November 14, 1961 to November 24, 1961 for the late deceased husband and the defendant while they were both in Rochester, Minnesota . . . . In view of the fact that the signature on the stock certificate was not that of the husband, the said stock certificate is a complete nullity and created no interest in the daughter by virtue of its alleged issuance.

Plaintiff asserts that the evidence affirming ownership of the stock certificate in her is overwhelming; she had possession of the stock certificate and was the registered owner of the stock on the books of the corporation, all of which amounted to a prima facie presumption of ownership in the possessor and registered owner of the shares. She states the federal tax returns reflected her as a 50% owner; the testimony of the independent certified public accountant who prepared all the financial reports from the books, records and information supplied him by the defendant indicated that plaintiff was the owner of the stock; and the minutes of a corporate meeting, which were signed by defendant, recited that ownership of 25 shares of the corporate stock was in the plaintiff. Plaintiff contends this evidence alone was sufficient to prove the proof of ownership.

Plaintiff also contends that "there is a prima facie presumption of ownership when the person who is the possessor of a stock certificate also appears as the registered owner on the corporate books." Plaintiff's citations include Gillett v. Chicago Title & Trust Co., 230 Ill 373, 82 NE 891 (1907), and Head v. Wood, 20 Ill App2d 97, 155 NE2d 348 (1959). Plaintiff argues that the only

267

evidence offered in rebuttal of this presumption was the testimony of defendant, Betty Gersten, that she attempted to commit a fraud in avoiding probate and taxes by assigning the certificate after her husband's death.

Plaintiff also maintains that "the doctrine of estoppel by deed" applies here. Plaintiff states this principle was extended to mortages, bonds and escrow agreements in Gould v. Klabunde, 326 Ill App 643, 63 NE2d 258 (1945), where it is said (p 649):

> "Obligor and sureties on the bond are estopped in a suit on the bond, to set up a defense which would contradict the recitals or implications of the bond. . . . They cannot be heard to say it is a nullity. They obtained all the benefits of the bond."

Plaintiff further maintains that "the 'clean hands doctrine' of equity bars the defendant from claiming ownership of the stock in question," and "equity will not relieve one party against another when both are in pari delicto." Plaintiff argues that "if it is true that the stock certificates were prepared to defraud the state of its taxes and avoid probate, then the Defendant comes into court with unclean hands," and "the rules of equity would require the court to leave the parties as they were."

Defendant-counterclaimant contends that since she was not a party to the transfer of her husband's stock certificate, no estoppel may be asserted against her. Defendant argues that Mr. Gersten was the sole owner of the certificate and he, not Mrs. Gersten, was the purported grantor, and the issue here concerns the validity of the attempted transfer. Estoppel by deed precludes the grantor only from denying the nature of his interest in the estate conveyed, and if Mrs. Gersten was bound by an estoppel, she would be prevented from denying only what she has never denied—that her husband owned the 25 shares of stock. Defendant asserts the applicable rule

here was stated in Thornton v. Louch, 297 Ill 204, 130 NE 467 (1921), where the court said (p 212):

> "Whatever the form or nature of the conveyance, if the grantor recites on the face of the instrument, either by express terms or necessary implication, that he is seized or possessed of a particular estate which the deed purports to convey, the grantor and all persons in privity with him are estopped from afterwards denying it."

Defendant-counterclaimant contends that the "unclean hands" doctrine does not apply here, since Mrs. Gersten's alleged wrong was not directed towards Mrs. Rudolph. Defendant argues that "while Mrs. Gersten may have committed a wrong as far as the State of Illinois or some other public body is concerned with regard to the execution of her husband's stock certificates after his death, that conduct in no way harmed Mrs. Rudolph who did not rely on that conduct to her detriment and did not contribute any consideration for the stock." Authorities cited include 7 ILP, Chancery, § 96, where it is said (p 319):

> "The maxim that he who comes into equity must come with clean hands generally does not apply unless the inequitable conduct of the party seeking equitable relief has been directed toward the opposite party. The misconduct must in some measure affect the equitable relationship subsisting between the parties and arising out of the transaction."

Defendant-counterclaimant argues that her testimony regarding the authenticity of the signatures on Mr. Gersten's stock certificate and when they were placed there stands uncontradicted in the record, and "the chancellor chose simply not to accept Mrs. Rudolph's version of the occurrence, and, as was his province, believed Mrs. Gersten's proof which he justifiably concluded rebutted any presumption which may have initially existed in Mrs.

Rudolph's favor." Defendant further submits that the chancellor's findings on the stock certificates were not against the manifest weight of the evidence and should not be reversed. Defendant cites Head v. Wood, 20 Ill App2d 97, 155 NE2d 348 where the court said (p 107) :

"The chancellor in this case evidently believed the witnesses for the appellees and so found. A court of review will not disturb the findings of fact made by the chancellor, under such circumstances, unless they are clearly against the manifest weight of the testimony."

As to the stock transaction, we agree with defendant-counterclaimant (1) that the chancellor's findings are not against the manifest weight of the evidence or that an opposite view is clearly apparent; (2) that no estoppel may be asserted against her in the transfer of her husband's stock certificate. She was not a grantor nor was she the owner of the stock certificate. The issue here was the validity of the transfer of the 25 shares from Mr. Gersten to plaintiff. It is not contended that Mrs. Gersten had any authority to sign her husband's name to the certificate. Therefore, the assignment of it to Barbara was a nullity, and the issuance of a stock certificate to Barbara for the same shares was improper and also a nullity; and (3) the "unclean hands" doctrine does not apply here, since the alleged wrong was not directed toward plaintiff, Mrs. Rudolph. The alleged fraud was directed toward the avoidance of inheritance taxes, and no wrong was intended toward plaintiff.

Finally, we note that the judgment against plaintiff for $8,010.71 was based on two promissory notes executed by plaintiff in consideration of loans made to her by the defendant, Mrs. Gersten. The court found "by plaintiff's, Barbara V. Gersten Rudolph's, own admission in open Court," there was a total balance due of $7,000, plus interest of $1,010.71, on two notes executed by plain-

270

tiff on August 1, 1963, in consideration of loans made to her by the defendant, Betty R. Gersten. As plaintiff's brief does not argue this portion of her appeal, we consider this part of her appeal has been waived.

In conclusion, we find that the chancellor's decree is supported by both the facts and the law, and it is hereby affirmed.

Affirmed.

BURMAN, P. J. and ADESKO, J., concur.