**UNITED STATES of America, Plaintiff,**

v.

**ONE 1986 CHEVROLET MONTE CARLO, VEHICLE IDENTIFICATION NUMBER 1G1GZ37G2GR201549, Defendant.**

No. 92 C 2595.

United States District Court,
N.D. Illinois,
E.D.

March 26, 1993.

James Michael Kuhn, U.S. Attorney's Office, Chicago, IL, for U.S.

Marc William Martin, Genson, Steinback & Gillespie, Chicago, IL, for Robert D'Andrea and Barbara D'Andrea.

Thomas Wilson Waters, Ronald N. Lorenzini, Jr., Kemp & Capanna, Ltd., Oak Brook, IL, for First Federal Sav. of Hegewisch.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court is the plaintiff United States of America's (the "government") motion for summary judgment. For the following reasons, the motion is denied.

### FACTS

On February 1, 1990, Barbara D'Andrea ("Mrs. D'Andrea") purchased the defendant vehicle, a 1986 Chevrolet Monte Carlo (the "Chevy"), for $6,000. The purchase of the Chevy had been arranged by Robert D'Andrea ("Robert"), the only son of Mrs. D'Andrea. Robert recommended the purchase of the Chevy as a small investment; according to Mrs. D'Andrea, Robert, a mechanic, was to maintain, improve, and resell the Chevy, at which time Robert and Mrs. D'Andrea would each enjoy a 50% share of any profit. Consistent with her investment plans, Robert installed a larger, more powerful engine in the Chevy, which subsequently improved the value of the car. The purchase price of the Chevy was financed entirely by Mrs. D'Andrea, who also insured it and paid for the license plate renewal. Although Mrs. D'Andrea carried the financial burdens of owning the Chevy, Robert was entrusted with its exclusive use.

On July 8, 1991, Robert used the Chevy to transport certain laboratory glassware that he purchased under a fictitious name. According to the government, Robert knew the glassware was to be used in the manufacturing of a Grignard reagent [1], an interim reagent used in the manufacturing of phencyclidine ("PCP"). On December 2, 1991, the government seized the Chevy on the basis of its transportation of equipment intended to be used in the processing of a controlled substance. On May 19, 1992, Mrs. D'Andrea filed a verified claim to the Chevy, to which the government has filed the instant motion for summary judgment.

### DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that for a party to prevail on a summary judgment motion "the

---

1. Both the government and the claimant have erroneously stated that the glassware purchased by Robert was allegedly to be used to manufacture "grenyard" reagent. The court presumes that the parties actually mean that the glassware would allegedly be used to manufacture a Grignard reagent, one of the most widely used organometallic reagents in nucleophile-electrophile reactions. These reagents, simply made from alkyl halides and magnesium in dry ether, are named for Victor Grignard, who in 1900 was the first chemist to report this reaction product. *See* Douglas C. Neckers & Michael P. Doyle, *Organic Chemistry*, § 11.8 (1978).

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Even though all reasonable inferences are drawn in favor of the party opposing the motion, *Beraha v. Baxter Health Care Corp.,* 956 F.2d 1436, 1440 (7th Cir.1992), a scintilla of evidence in support of the nonmovant's position will not suffice to oppose a motion for summary judgment. *Brownell v. Figel,* 950 F.2d 1285, 1289 (7th Cir.1991). Instead, the nonmoving party must elucidate specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Moreover, to preclude summary judgment the disputed facts must be those that might affect the outcome of the suit, *First Indiana Bank v. Baker,* 957 F.2d 506, 508 (7th Cir. 1992), and a dispute about a material fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and defenses...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Accordingly, the nonmoving party is required to go beyond the pleadings with affidavits, depositions, answers to interrogatories and admissions to designate specific facts showing a genuine issue for trial. *Bank Leumi Le-Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991).

The government seized the Chevy pursuant to the forfeiture provision of the Controlled Substances Act (the "Act"), which states in part:

(a) The following shall be subject to forfeiture:

.　　.　　.　　.　　.

(2) All raw materials, products, and *equipment of any kind which are used, or intended for use, in manufacturing,* compounding, processing, delivering, importing, or exporting any controlled substance in violation of this subchapter.

.　　.　　.　　.　　.

(4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph ... (2) ... except that—

.　　.　　.　　.　　.

(C) no conveyance shall be forfeited under this paragraph to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge, consent, or willful blindness of the owner.

21 U.S.C. § 881(a) *(emphasis added).*

■ Mrs. D'Andrea asserts that she is the innocent owner of the Chevy, and accordingly, under 21 U.S.C. § 881(a)(4)(C), the forfeiture of the Chevy should be vacated and possession be restored to her. In order for Mrs. D'Andrea to contest the government's civil forfeiture action, she must possess an ownership interest in the seized property. *United States v. One Parcel of Land,* 902 F.2d 1443, 1444 (9th Cir.1990); *United States v. Five Hundred Thousand Dollars,* 730 F.2d 1437, 1439 (11th Cir.1984). Although Mrs. D'Andrea financed, licensed, held title to, and insured the Chevy, the government contends that her failure to possess the automobile during the twenty-two months that it was exclusively driven by Robert voids any ownership interest which she may have had.

Subsections 881(a)(6) and (7) of the Act provide an innocent owner defense to the forfeiture of personal property furnished in exchange for controlled substances and of real property used to facilitate violations of federal drug laws. The legislative history of subsection (6) states that "[t]he term 'owner' should be broadly interpreted to include any person with a recognizable legal or equitable interest in the property seized." 96th Cong., 2d Sess., Joint Explanatory Statement of Titles II and III, reprinted in 1978 U.S.Code Cong. & Admin.News 9496, 9518, 9522. The

innocent owner protection afforded by § 881(a)(4) is narrower only to the extent that it adds the absence of "willful blindness" to the burden the owner must demonstrate to avoid the forfeiture. Without further Congressional guidance, therefore, the language of subsection (4) should be given an interpretation in harmony with that accorded subsections (6) and (7).

■ Ownership is generally evidenced by indicia of dominion and control such as possession, title, and financial stake. *United States v. One 1945 Douglas C–54 Aircraft,* 604 F.2d 27, 28 (8th Cir.1979); *United States v. One 1981 Datsun 280ZX,* 563 F.Supp. 470 (E.D.Pa.1983). The parties do not dispute Mrs. D'Andrea's possession of legal title to the Chevy; nevertheless, as the government correctly notes, possession of bare legal title may be insufficient to establish ownership. *See United States v. Accounts Nos. 3034504504 and 144–07143,* 971 F.2d 974, 985 (3d Cir.1992); *United States v. One Parcel of Land,* 902 F.2d 1443, 1444 (9th Cir.1990); *United States v. 526 Liscum Dr.,* 866 F.2d 213, 217 (6th Cir.1989); *United States v. Single Family Residence,* 803 F.2d 625, 630 (11th Cir.1986). Mrs. D'Andrea, however, possessed more than bare legal title. *Contra 526 Liscum Dr.,* 866 F.2d at 217 (claimant relied on bare legal title); *Single Family Residence,* 803 F.2d at 630 (same). Further, unlike the claimant in *One Parcel of Land,* Mrs. D'Andrea has a documented financial stake in the Chevy. Although the record indicates that Mrs. D'Andrea entrusted Robert with exclusive use of the Chevy, Robert and Mrs. D'Andrea have provided deposition testimony evidencing Mrs. D'Andrea's continued dominion and control over the automobile.[2] *See contra Accounts Nos. 3034504504 and 144–07143,* 971 F.2d at 985–86 (claimant failed to show that it could exercise dominion and control over *res* independent of actual owner). Furthermore, Mrs. D'Andrea had fulfilled certain other responsibilities incident to the ownership of an automobile, such as payment of insurance coverage and the purchase of license plate tags.

The government claims that Mrs. D'Andrea's relationship to the Chevy is analogous to that of the claimant in *United States v. One 1971 Porsche Coupe,* 364 F.Supp. 745 (E.D.Pa.1973). In that case, a father purchased a car for his son, and although he retained legal title, his son was nevertheless allowed to exercise sole possession and complete dominion and control over the Porsche. Evidence produced in that case showed that the car was referred to as the son's, that the son frequently drove the car but the father did not, that the car was turbocharged and capable of great speed but the father was 72 years old and had a heart condition, and that the father did not pay for the vehicle. 364 F.Supp. at 748. Consequently, the *1971 Porsche* court found that the father lacked standing to contest the forfeiture because he did not possess or control use of the defendant automobile. More importantly, however, the *1971 Porsche* court found that the father had purchased the Porsche as a gift for his son who had just returned from military service in Viet Nam.

■ Neither Robert nor Mrs. D'Andrea contest the fact that Robert had possession of the Chevy; they do, however, contest the government's position that Mrs. D'Andrea gave the Chevy to Robert as a gift. Whether Mrs. D'Andrea's relinquishment of the Chevy's possession was a gift to Robert is a question of fact, the answer to which depends on whether Mrs. D'Andrea possessed the requisite donative intent accompanied by a release of her exclusive dominion and control. *Frey v. Wubbena,* 26 Ill.2d 62, 71, 185 N.E.2d 850, 856 (1962). To establish a gift, the proof must be clear and convincing, and the party claiming a gift was made has the burden of establishing the existence of a donative intent. *Rudolph v. Gersten,* 100 Ill.App.2d 253, 263, 241 N.E.2d 600, 605 (1968) ("burden is

---

**2.** The government contends that Mrs. D'Andrea failed to exercise any dominion or control over the Chevy because Robert had unrestricted authority to drive, modify, and otherwise possess the car. The concept of dominion, however, includes control over disposition. *See Eastex Aviation, Inc. v. Sperry & Hutchinson Co.,* 522

F.2d 1299, 1307 (5th Cir.1975). The government does not claim that Robert was free to dispose of the Chevy at will; however, both Robert and Mrs. D'Andrea content that she maintained at least some input as to the ultimate disposition of the Chevy.

upon the alleged donee to establish the existence of a donative intent"), citing *In re Schneider*, 6 Ill.2d 180, 187, 127 N.E.2d 445, 449 (1955). The government has shown that Robert enjoyed exclusive use of the Chevy; this showing, however, when coupled with Mrs. D'Andrea's retention of title and her regular financial contributions, is inconclusive as to Mrs. D'Andrea's donative intent. The court, therefore, cannot conclude that Robert's possession of the Chevy was by virtue of a gift from his mother, and the instant case is thus distinguishable from *One 1971 Porsche.*

■ Despite the indicia of evidence presented by Mrs. D'Andrea in support of her ownership of the Chevy, the government contends that Mrs. D'Andrea relinquished her ownership by allowing Robert to possess exclusively the automobile. The government's contention, however, is defeated by the broad interpretation to be afforded the concept of ownership. While the court is aware that in the world of drug trafficking things are often not what they appear to be, the court is not convinced that Mrs. D'Andrea financed the Chevy, purchased its license plate tags, maintained insurance coverage, and held its legal title in a duplicitous attempt to disguise Robert's purported ownership interest. The court finds that Mrs. D'Andrea has met the ownership portion of § 881(a)(4)(C)'s innocent owner exception.

Even if Mrs. D'Andrea were the actual owner of the Chevy, the government contents that she cannot prevail on her claim as an *innocent* owner because knowledge of Robert's activities is vicariously imputed to Mrs. D'Andrea by virtue of their mutual interest in the Chevy. According to the D'Andreas, the Chevy was purchased as an investment, whereby the vehicle would be improved and resold at a profit. The government contends, therefore, that the D'Andreas' investment plans constitute a joint venture. *Smith v. Metropolitan Sanitary Dist.*, 77 Ill.2d 313, 33 Ill.Dec. 135, 396 N.E.2d 524 (1979) ("joint venture is an association of two or more persons to carry out a single enterprise for profit"). Because the relationship of parties engaged in a joint venture are tested by the same legal principles that govern partnerships, *Smith*, 77 Ill.2d at 316, 33 Ill.Dec. at 138, 396 N.E.2d at 527, any wrongful act of one party acting in the ordinary course of the venture renders the other joint venturers liable to the same extent as the acting party. The government argues, therefore, that because Robert's use of the Chevy was a contemplated function of the joint venture, his acts and knowledge must be imputed to the venture and to Mrs. D'Andrea, thereby eliminating Mrs. D'Andrea's innocent owner defense.

■ As a general rule, whatever knowledge a partner acquires within the scope of its authority is imputed to its partners. *See First Nat'l Bank v. United States*, 653 F.Supp. 1312, 1316 (N.D.Ill.1987) (knowledge acquired by agent within scope of authority imputed to principal). Application of that rule to Mrs. D'Andrea affords the presumption that whatever Robert knew Mrs. D'Andrea also knew. This presumption, to have significance, requires a finding of fact as to what Robert knew. Thus, at issue is whether Robert was aware the Chevy was being used to transport equipment intended for use in manufacturing a controlled substance. *See* 21 U.S.C. § 881(a)(4)(C).

The government alleges that Robert used the Chevy to transport glassware that would be used by a third party to manufacture a Grignard reagent that would in turn be sold to another party who would subsequently use the reagent to manufacture PCP. Based on the affidavit of John B. Hardcastle ("agent Hardcastle"), a special agent with the Drug Enforcement Administration, the government claims Robert knew the glassware was to be used for the manufacture of illicit substances. Agent Hardcastle's deposition, however, indicates that his conclusion as to Robert's knowledge was based on his interpretation of certain statements made to him by Robert; accordingly, the government's claim is not factually dispositive.[3] Further-

---

3. Agent Hardcastle's conclusions as to Robert's knowledge were apparently based on his meeting with Robert on December 4, 1991. Robert, un-

beknownst to agent Hardcastle and in violation of Ill.Ann.Stat. ch. 38, ¶ 14–1 *et seq.*, recorded their meeting. While the transcript of that meet-

more, the government's assertion is disputed by Robert's deposed testimony.

■ Additionally, even if the government could conclusively demonstrate Robert's knowledge of the glassware's use in the PCP manufacturing process, a material issue of fact exists as to whether Robert exceeded his scope of authority by using the Chevy to transport drug manufacturing equipment. While the acts and knowledge of a partner acting within the scope of its authority are generally imputed to the other partners and the partnership, the converse is also true: the acts committed and the knowledge obtained by a partner outside the scope of its authority are not imputed to other partners or the partnership. *First Nat'l Bank v. United States,* 653 F.Supp. 1312 (N.D.Ill. 1987). Furthermore, the scope of a partner's authority for purposes of imputation of knowledge is a question of fact. *See Evanston Bank v. ContiCommodity Servs., Inc.,* 623 F.Supp. 1014, 1034 (N.D.Ill.1985).

■ The alleged joint venture between Robert and Mrs. D'Andrea was to increase the value of the Chevy so that a profit could be realized upon resale, and Robert's duty and authority, as joint venturer, was to maintain and improve the Chevy's value. Although the government contends that Robert's mere use of the Chevy was a specifically contemplated function of the joint venture, neither the government nor Mrs. D'Andrea have addressed the issue of whether the ultimate aim of Robert's transportation of the glassware was to accomplish, albeit illegally, a purpose that was within his scope of authority. Therefore, a material issue of fact exists as to whether Robert exceeded his scope of authority in the alleged joint venture.

Mrs. D'Andrea has raised genuine issues of material fact as to her interest in the Chevy as an innocent owner. While the court concludes that Mrs. D'Andrea owned the Chevy, whether she can be an innocent owner in light of her possible joint venture

with Robert is in question. Because an outcome determinative factual dispute exists, summary judgment is precluded. *Harris Trust & Sav. Bank v. Edelson (In re Wildman),* 859 F.2d 553 (7th Cir.1988).

## CONCLUSION

For the foregoing reasons, the government's motion for summary judgment is denied.

IT IS SO ORDERED.

ing lacks an overt statement as to Robert's knowledge of the glassware or Grignard reagent's ultimate use, the transcript does not include any physical reactions or gestures which Robert may have made in response to special agent Hardcastle's dialogue. The court, therefore, disregards Mrs. D'Andrea's allegations of perjury by agent Hardcastle and, instead, will treat agent Hardcastle's statement of fact as one of opinion.