80 Ill. App.3d 1080 (1980)
400 N.E.2d 641
In re ESTATE OF DELLA MAY DENLER, Deceased.  (WARREN DENLER, Petitioner-Appellee and Cross-Appellant,
v.
EILEEN DENLER ANDRACKE, Respondent-Appellant and Cross-Appellee.)
No. 79-4.
Illinois Appellate Court  Third District.
Opinion filed January 29, 1980.
*1081 *1082 John Olivero and William LaSorella, both of Peru, for appellant.
Paul R. Muenchow, of Peru, for appellee.
Affirmed in part and reversed in part.
Mr. JUSTICE ALLOY delivered the opinion of the court:
This is an appeal and a cross-appeal from decisions of the Circuit Court of La Salle County in the estate proceedings of Della May Denler, deceased. In the estate proceedings, Warren Denler filed a citation to recover assets, seeking recovery from his sister and her family of various properties which he claimed rightfully belonged to his mother's estate. (Ill. Rev. Stat. 1977, ch. 110 1/2, par. 16-1.) After a full hearing on the petition, the circuit court ordered recovery of three certificates of deposit held by Eileen Andracke (Mrs. Denler's daughter and Warren Denler's sister). The court also ordered the recovery of certain real estate claimed by Eileen Andracke. In addition, the court ordered that Warren Denler be reimbursed out of estate assets for moneys expended by him in the care of his mother before her death. From these rulings, adverse to her, Eileen Andracke appeals.
The court also found that there should be no recovery by the estate of certain moneys, insurance proceeds and personal property held by Eileen Andracke but claimed as part of the estate by Warren Denler. In addition to finding that such property rightfully belonged to Eileen Andracke, the court ordered that she was entitled to $9,500 from proceeds of the sale of the real estate as repayment for a loan of that amount to Mrs. Denler. From these rulings, adverse to him, Warren Denler has filed a cross-appeal.
The record discloses that Mrs. Della Denler and her husband had two children, Warren and Eileen. In 1969, Mrs. Denler's husband died and left the bulk of his estate to his widow. Mrs. Denler was also the surviving joint tenant of the family home and of five certificates of deposit. At that time, Mrs. Denler was in fair health, following recovery from a 1965 stroke. After her husband's death and while still in good health, she told her daughter, Eileen Andracke, that it would be up to her, Eileen, to take care of her mother in the event that anything should happen to Mrs. Denler. Between October 9, 1969, and November 13, 1970, Mrs. Denler and Eileen went to the Colonial Bank and Trust Company in Peru, *1083 Illinois, and had the listed ownership of the certificates of deposit changed. One $500 certificate of deposit, two $5,000 certificates of deposit, and one $10,000 certificate of deposit were all placed in joint tenancy between Mrs. Denler and Eileen Andracke. Another $10,000 certificate was made a payable-on-death certificate, payable to Eileen Andracke. According to uncontradicted testimony, on each occasion wherein a change in ownership was made, bank personnel explained to Mrs. Denler the nature of joint tenancy, including the rights of survivorship in the surviving joint tenant. The evidence indicated that Mrs. Denler and Eileen Andracke signed signature cards indicating the certificates were to be held in joint tenancy after such explanations were given by bank personnel. Eileen and her mother also opened a joint checking account at that time, for the convenience of Mrs. Denler. Up until a 1975 stroke, Mrs. Denler wrote her checks herself from the account. Mrs. Denler lived alone and took care of herself at the time the certificates of deposit were changed into joint tenancy and up until 1975. Mrs. Denler maintained exclusive control and possession of the certificates, and kept them in a strong box in her home. It is undisputed that the moneys used for the certificates were those of Mrs. Denler.
In December 1973, Mrs. Denler and Eileen Andracke went to the law offices of attorney Francis Duncan, and there two deeds concerning the family home, solely owned by Mrs. Denler, were drawn up and executed. The first deed conveyed to Duncan's secretary the real estate, while the second deed from the secretary reconveyed the property to Mrs. Denler and Eileen in joint tenancy. Mrs. Denler continued to reside in the home and both her children visited her there, although Eileen was the more frequent visitor and helped her mother with routine shopping, paying bills and other such everyday chores. On August 23, 1975, Della May Denler suffered a disabling stroke. After hospitalization, she was placed in a nursing home, suffering from partial paralysis which severely limited her movement and her speech, although from the evidence it appears there was no impairment of her intellectual abilities.
In the early spring of 1976, Eileen Andracke wrote to her brother Warren, who was then in California, informing him that she intended to sell the house and to remove their mother from Turtlecreek Nursing Home, where she had been staying, and place her in another home. The change in residence was accomplished, but when Warren Denler returned home he had his mother returned to Turtlecreek since, according to his testimony, the environment at the other home was unacceptable to him and to his mother. According to his testimony, it was also about this time that he and his sister agreed that their mother's affairs should be put in a joint account, between the two of them, and that thenceforth both would sign the checks necessary for their mother's care. For this purpose, Eileen *1084 Andracke transferred one of the $5,000 certificates, held in joint tenancy between her and her mother, into a joint account between her and her brother. A portion of that money was used to pay nursing home expenses and the remainder was put into the joint account of the sister and brother. None of the other certificates of deposit were ever transferred into the joint account, and Eileen Andracke later claimed that they were hers and she wished to keep them as they were.
Further testimony at trial indicated that Mrs. Denler, during 1975, had made a new will, in which she left all of her estate to her daughter, Eileen Andracke, and if Eileen should die, to her son-in-law. Warren Denler was excluded from any inheritance. According to his testimony, his sister told him that the will had been drawn up that way because he and his second wife were having troubles and Eileen had informed their mother that if anything should happen to Warren, the estate would go to his wife. He testified that Eileen at first agreed to have the will revoked when informed by him that the marriage was now going fine, but that she later changed her mind and told him that she would not have the will "voided." It was at that time that Warren and Eileen stopped talking to each other.
It was also about this time that Mrs. Denler executed another will, the one which was before the court in this estate matter. That will, dated April 9, 1976, revoked all prior wills and codicils and devised all her estate, after payment of just debts and expenses, to her son, Warren, and her daughter, Eileen, in equal and proportionate shares. It also appointed them as co-executors. Clear and uncontradicted testimony in the record, from the attorney who prepared the will and from a nurse who witnessed its execution, indicated that Mrs. Denler was of sound mind at that time and that she wished her estate to be divided equally between her children. She also executed a power of attorney on April 9, 1976, appointing her son, Warren, as her attorney and directing him to create joint tenancy title between himself and Eileen in all savings accounts, certificates of deposit, and checking accounts then owned by her.
The power of attorney also authorized Warren to execute a quitclaim deed of the real estate for the purpose of creating a joint tenancy ownership of it between himself and Eileen. Along with the specific directions and powers, the document also directed that it be construed and interpreted as a general power of attorney. The power of attorney was signed by Mrs. Denler, witnessed by the attorney who drew it up, and duly notarized. Subsequently, Warren Denler, pursuant to the direction and power contained within the power of attorney, quitclaimed his mother's interest in the real estate to himself. However, he took no action, as attorney for his mother, with respect to the certificates of deposit, inasmuch as Eileen refused to turn the certificates over to him *1085 and the bank and also refused to execute any document creating joint tenancy between Eileen and her brother. The certificates had been taken by Eileen from her mother's home after her mother suffered the August 1975 stroke.
Another document pertinent to the issues on appeal is a trust agreement, executed by Mrs. Denler, as settlor, and by Eileen Andracke, as trustee, on December 6, 1976. That agreement was prepared by an attorney for Eileen Andracke, although Mrs. Andracke testified that the idea of the trust agreement was her attorney's idea, not hers. Mrs. Andracke's son explained the provisions of the three-page trust agreement to Mrs. Denler prior to the latter's execution of the document. The trust agreement purported to transfer the three remaining joint tenancy certificates of deposit to Eileen in trust, with a provision that the trustee, Eileen, use so much of the income and principal as necessary for Mrs. Denler's support and care. In addition, the trust agreement recited that the real estate was currently held by Eileen and Warren, as joint tenants, and the agreement directed that the real estate be sold and the proceeds, minus $9,500 for a loan repayment to Eileen, be put in trust for Mrs. Denler's benefit. Mrs. Denler also executed another power of attorney, this time to Eileen, empowering her to bring the trust property into the trust. The trust agreement itself directed that upon Mrs. Denler's death, the trustee was to pay expenses and debts and then was to distribute the remaining principal and income to her children, equally.
Della May Denler died on September 20, 1977, and a petition for probate of her will of April 9, 1976, was filed on November 1, 1977. In the estate proceedings, Warren Denler filed a citation and petition to recover assets for the estate. (Ill. Rev. Stat. 1977, ch. 110 1/2, par. 16-1.) Among the property sought to be recovered for the estate were the three remaining certificates of deposit, naming Mrs. Denler and Eileen as joint tenants, the payable-on-death certificate, the real estate, and various items of personal property, including furniture and personal items, which had allegedly been given to Eileen Andracke and other members of her family by Mrs. Denler. Warren Denler also sought recovery of the proceeds of certain life insurance policies on Mrs. Denler's life which had been paid to Eileen as beneficiary under the policies. The court conducted a hearing on the recovery proceedings and received memoranda from counsel. The court then entered its order on November 1, 1978.
The court made specific findings concerning all of the property at issue in the recovery proceeding. With regard to the three certificates of deposit in joint tenancy between Mrs. Denler and Eileen Andracke, the court found that the presumption of donative intent implicit in the creation of those certificates had been overcome by clear and convincing evidence; that the requisite donative intent was lacking. The court found *1086 that those certificates were to be held for the care of Mrs. Denler, thus concluding that the joint tenancy arrangement had been created solely for her convenience and no change of ownership was intended.
With regard to the real estate, the court found that it too must be considered an asset of the estate since Mrs. Denler did not intend to make a gift of the property to her daughter when the joint tenancy was created. The court held that the $10,000 "Payable on Death to Eileen Andracke" certificate was not an asset of the estate but belonged to Eileen Andracke. The court also held that Eileen Andracke was entitled to $9,500 from the sale of the real estate, as repayment of the loan mentioned in the trust agreement of 1976. With regard to the life insurance proceeds, the court found nothing to negate a gift of the proceeds to Eileen and it held such proceeds to be the property of Eileen Andracke.
Warren Denler had also contended that certain furniture and other personal effects of Mrs. Denler had been taken from her home in such manner that they ought be returned to the estate. The court concluded that the contested furniture and other personal property had been validly given to Eileen Andracke and members of her family by Mrs. Denler. A final holding of the circuit court in this manner was that Warren Denler should be reimbursed from estate assets for the money he advanced for his mother's care while at the nursing home, during the time wherein no payments were made from Mrs. Denler's own account because of the feuding of the children.
From the decision and order of the court, Eileen Andracke appeals, arguing that the certificates of deposit and the real estate were held by her and her mother in valid joint tenancy and that, therefore, they properly passed to her at her mother's death. She argues that the evidence showed a donative intent on her mother's part at the time the certificates were created and at the time the real estate was conveyed. Eileen also asserts as error the court's finding that Warren Denler was entitled to be reimbursed from the estate assets for moneys he expended for the care of his mother. She argues that such payments were made voluntarily by him, and that in any event the issue was not properly raised or litigated before the court in the recovery proceedings. She asserts that Warren's claim ought to withstand the scrutiny of an estate claim.
Warren Denler has filed a cross-appeal directed at the other portions of the court's order. He claims error in the court's decision that Eileen should have the payable-on-death certificate proceeds and the insurance proceeds and various items of personal property. He asserts that the record establishes that these were obtained through the exertion of undue influence by Eileen. He also claims that the awarding of the $9,500 loan repayment was erroneous because there was insufficient evidence to support that the loan was ever made. He likewise argues that the issue of *1087 the loan was not raised in the pleadings or litigated in the recovery proceedings.
 1 Having set forth the unfortunate history behind this case, we turn to our discussion and resolution of the various issues raised. As to the three certificates of deposit, #4205, #2632, and #2729, we find that there was no error in the court's conclusion that clear and convincing evidence overcame the presumption of donative intent with respect to those certificates. There was no error in the court's conclusion that Mrs. Denler lacked the requisite donative intent. The rules with respect to this issue are well settled. As stated by the court in In re Estate of Guzak (1979), 69 Ill. App.3d 552, 388 N.E.2d 431:
"The transfer of personal property into joint tenancy by a father with the right of survivorship in his son creates a presumption of a valid gift to the son as the surviving joint tenant. [Citations.] The presumption is not conclusive but the burden is upon the one who challenges the gift to present clear and convincing evidence of the absence of a donative intent. [Citations.] In determining whether the donor actually intended to transfer his interest in the account at his death to the surviving joint tenant, it is proper to take into consideration the facts surrounding the creation of the joint account and all circumstances and events occurring after the creation of the joint account. [Citations.] Especially relevant to such a determination is the exercise of authority and control over the joint account. [Citations.] The fact that the surviving joint tenant did not consider himself as having any ownership in the account may be considered in determining the intent of the creator of the account. [Citation.] Evidence that the transfer was made for the mere convenience of the creator of the account is an indication of lack of donative intent. [Citations.] Another factor to be considered is the quantity of personal property involved in comparison to the total assets of the estate. [Citations.]" 69 Ill. App.3d 552, 554-55.
In the instant case, the evidence rebutting the presumption of donative intent is clear and convincing. The moneys used for the certificates of deposit were those Mrs. Denler had received from her husband's estate and from their certificates of deposit. Eileen Andracke, the named joint tenant, had contributed nothing towards them. The evidence discloses that until the time of her disabling stroke in 1975, Della Denler kept the certificates of deposit at her home and exercised authority and control over them. It was only after her stroke and subsequent hospitalization that the certificates came into Eileen's hands, when she removed them from her mother's house. Other evidence that the accounts were not intended as a gift, but were for Mrs. Denler's convenience only, *1088 was disclosed by certain testimony by Eileen Andracke. Mrs. Andracke admitted in her testimony that the moneys were to be used for her mother's care.
In her deposition testimony, introduced for impeachment at trial, Eileen Andracke stated that the certificates were her mother's. Also, in testimony at trial, when Eileen was asked why she did not turn them over to the bank to be made into a joint account with her brother, she stated it was because she had "no authority to sign the funds over without my mother's consent. The CD's, the time certificates, were to be used for her care if she was sick." There is also the evidence that one of the certificates was transferred by Eileen into a joint account with her brother for her mother's care. We conclude that the evidence was sufficient to establish that the certificates in joint tenancy were created for Mrs. Denler's convenience and that there was no intent to make a gift of them to Eileen as surviving joint tenant. In addition to the foregoing evidence, there is also evidence in the form of various documents executed by Mrs. Denler subsequent to the creation of the time certificates. The power of attorney, dated April 9, 1976, treats the certificates as if they were owned and controlled by Mrs. Denler. In addition, the trust agreement, executed by Mrs. Denler and Eileen as trustee, which purports to transfer those certificates to Eileen in trust, indicates Mrs. Denler's view that the certificates were hers to transfer and dispose of in the way specified in the agreement. Mrs. Andracke's own signature on the document evidences her understanding that the certificates were her mother's to dispose of as the mother wished.
 2 Opposing all of this evidence which indicates that Mrs. Denler considered the certificates in joint tenancy hers and that they were created for her convenience only is the testimony of Eileen Andracke that her mother told her that the certificates were to be hers when she died. Such assertion, as noted, is inconsistent with Eileen's deposition testimony which made no mention of such a statement by her mother, but rather admitted that the certificates belonged to her mother. The clear and convincing evidence indicated a lack of donative intent at the time of creation of the joint tenancy certificates of deposit. Petitioner Warren Denler met his burden of negating the presumption of donative intent. The decision of the circuit court with regard to those three certificates of deposit is affirmed.
We turn next to the issue of the $10,000 payable-on-death certificate. We affirm the circuit court's decision that this account properly belonged to Eileen Andracke and is not an asset of the estate. Cross-appellant Warren Denler asserts that this account must be held to be in a constructive trust for the benefit of the estate, alleging that it was obtained by Eileen as a result of undue influence. It is alleged that a confidential *1089 and fiduciary relationship obtained between Eileen and her mother at the time the certificate was created. (See Kester v. Crilly (1950), 405 Ill. 425, 432, 91 N.E.2d 419.) The evidence, however, does not support the conclusion urged by petitioner. While Eileen Andracke was helping her mother with her affairs in the fall of 1970, when the payable-on-death certificate was created, the record also shows that Mrs. Denler was, at that time, healthy, active and capable of managing her own affairs.
 3, 4 Since the trust relationship did not exist as a matter of law, it had to be proven by clear and convincing evidence. (Kester v. Crilly (1950), 405 Ill. 425, 432.) In the present case, such evidence was not produced. There was little showing that Mrs. Denler had entrusted her business and financial affairs to her daughter. She went to the bank to make the changes in the certificates. She was informed of the consequence of the changes that were made. In addition, the evidence in the record indicates that for some years after 1970, Mrs. Denler took care of herself and her own business and financial matters. That Eileen took her mother to the bank, or that she later signed checks for her and assumed a greater role in the conduct of her mother's financial affairs is not sufficient evidence for the court to conclude that she was guilty of breaching a fiduciary or confidential relationship at the time this payable-on-death certificate was created. As the named beneficiary of the payable-on-death account, therefore, Eileen was entitled to the proceeds therefrom. (In re Estate of Wright (1974), 17 Ill. App.3d 894, 308 N.E.2d 319.) The decision of the circuit court with regard to that account is affirmed.
 5, 6 Having resolved the issues concerning the certificates of deposit, we turn next to the issue of the real estate, being Mrs. Denler's home in the city of Peru. The evidence in the record established that Mrs. Denler transferred the real estate from her own sole ownership to joint tenancy ownership between herself and her daughter, Eileen, in December 1973. The testimony of both Eileen and the attorney who prepared the deed for Mrs. Denler was that she intended and understood that the property would go to Eileen upon her death. Subsequent to the creation of the joint tenancy in the real estate, Mrs. Denler executed a power of attorney, empowering and directing her son Warren, as her attorney, to convey to himself her interest in the real estate. Mrs. Denler sought to create a joint tenancy arrangement between Warren and Eileen in the real estate. Warren, acting for his mother, quitclaimed her interest to himself in 1976. There was no breach of a fiduciary duty on his part since the power of attorney specifically directed such conveyance. The result of the conveyance, however, was not the creation of a joint tenancy in the real estate between Warren and Eileen. Rather the conveyance worked a severance of the proportionate shares in the real estate, and thereafter Warren and Eileen held the property as tenants in common. (Liese v. *1090 Hentze (1927), 326 Ill. 633, 637, 158 N.E. 428.) Also, we must note that in his testimony before the trial court, Warren admitted that his conveyance, as attorney for his mother, to himself, was one in trust, in order to conserve the real estate for his mother's estate. We conclude that the share of the real estate held in trust by Warren, for his mother's estate, is part of the estate. However, the share of the property held by Eileen Andracke, as a result of the severance accomplished in 1976, is not to be included in the estate, but it is the property of Eileen Andracke. In reaching this conclusion, we find that the court erred in concluding that the entire real estate was required to be placed in Della Denler's estate.
 7 Unlike the situation with regard to the certificates of deposit, there was strong corroborative testimony that Mrs. Denler intended to make a gift of a part of the real estate when she made her daughter joint tenant in 1973. Mrs. Andracke's testimony to that effect was confirmed by the attorney who drew up the deeds as well as by his secretary. Neither is Mrs. Denler's subsequent conduct in executing the power of attorney to her son or the trust agreement inconsistent with the making of a gift to the daughter. Those later actions only indicate that she later wished to provide that her son get his proportionate share of the property. At the most, they can be construed to indicate that Mrs. Denler later changed her mind about the gift of the real estate in joint tenancy to her daughter. The actions of Mrs. Denler do not establish that at the time of the deeds she did not intend to make such a gift. As noted by this court in In re Estate of Vale (1977), 55 Ill. App.3d 712, 715, 371 N.E.2d 198, a later change of mind on the part of a donor does not operate to revoke the presumption of donative intent with respect to the transaction at its inception. Accordingly, we reverse the decision of the circuit court which held that all of the real estate was to be included in the estate. Our conclusion that a severance was accomplished in 1976 requires that the real estate be sold and that half of the proceeds be distributed to Eileen Andracke as her share as a tenant in common and that the other half of the proceeds, held by Warren Denler in trust, be placed in the estate for distribution in accordance with her will.
 8 We turn next to the issues raised with respect to the life insurance proceeds and the personal property, aside from certificates of deposit and checking accounts. The trial court found that the proceeds of two life insurance policies were given to Eileen by her mother over a year and a half prior to her death. The court found that Mrs. Denler signed the applications for change of beneficiary from her deceased husband to her daughter, and it also found nothing in the record to negate a gift of those proceeds. The findings by a court will not be disturbed unless found to be contrary to the manifest weight of the evidence. (In re Estate of Weisberg (1978), 62 Ill. App.3d 578, 378 N.E.2d 1152; Storr v. Storr (1946), 329 Ill. App. 537, *1091 69 N.E.2d 916.) We find no sufficient basis in the record to reverse the findings of the court with regard to the life insurance proceeds. The trial court also found that the only evidence presented with regard to the furniture and certain other items of personal property indicated that the items at issue were gifts of the decedent to her relatives. The court found no evidence to contradict or negate the evidence establishing that the gifts were made. It concluded also that the circumstances in which the transfers were made reasonably supported the evidence that the gifts were made. We are unable to say that the findings with regard to the gifts of furniture and other personal items are contrary to the manifest weight of the evidence.
Petitioner Warren Denler argues that as to both the life insurance and other personal items, these items were obtained by Eileen Andracke and members of her family not through valid gifts from Mrs. Denler but through undue influence and a breach of fiduciary and confidential relationships. The trial court was in a much better position to assess the credibility of the witnesses and the weight to be given to their testimony. It made no findings as to any undue influence or breach of a fiduciary relationship on the part of Eileen Andracke. The trial court's only comment along these lines was that Mrs. Denler loved both her children, but she was "maneuvered into conflicting positions by each of them. Her thinking was fairly well controlled by whichever child was with her at the particular time." This alternating influence by both of the children, which is established in the record, does not sufficiently establish that either exercised undue influence or that either breached a confidential or fiduciary relationship with their mother. If it were held to do so, then both children may have exercised undue influence and should be equitably estopped from profiting at all by their conduct. On the record, the orders of the trial court with respect to the insurance proceeds and the furniture and other personal property are affirmed.
 9, 10 The final issues in this cause concern the court's actions in ordering reimbursement to Warren Denler for moneys he expended on his mother's care and in ordering that Eileen Andracke be repaid $9,500 out of the proceeds of the sale of the real estate based on a loan to her mother. Eileen Andracke argues that reimbursement to Warren for expenses incurred in the care of his mother was not an issue properly pleaded and properly before the court. She asserts that the question was not litigated, and, if it had been, it would be established that Warren made those payments voluntarily. Warren, for his part, argues that the issue of repayment of the $9,500 loan was not in issue in the recovery proceedings and was not seriously litigated. He argues that there is insufficient evidence to support that estate claim. We note that citation proceedings (Ill. Rev. Stat. 1977, ch. 110 1/2, par. 16-1) are "intended to provide a *1092 comprehensive and summary means for the discovery and recovery of assets, or of their value if they have been converted." (Keshner v. Keshner (1941), 376 Ill. 354, 359, 33 N.E.2d 877.) The court, in such proceedings, is authorized to determine all questions of title, claims of adverse title and the right of property and may enter such orders and judgments as the case may require. (Ill. Rev. Stat. 1977, ch. 110 1/2, par. 16-1(d).) Necessarily, the court can only decide the issues placed before it in the citation proceedings. An order in such proceedings which goes beyond the issues raised in the pleadings is improper. (In re Conservatorship of Baker (1967), 79 Ill. App.2d 234, 241, 223 N.E.2d 744.) We find that, since these issues were not a part of the pleadings in this cause and were not fully litigated before the court below, the proper and equitable procedure is to reverse the decisions as to reimbursement and repayment of the loan, and to remand the cause to the circuit court with directions that those claims against the estate be determined as claims against the estate (Ill. Rev. Stat. 1977, ch. 110 1/2, par. 18-1 et seq.) and not within the framework of the citation proceedings. Both parties assert that their respective claims were entwined with the property in issue in the citation proceedings and that, therefore, the court properly awarded the moneys it did to them. We find that neither claim was "entwined" with the property at issue and sought to be recovered. While the basis for the $9,500 loan claim is the trust agreement, which recites that the loan was to be repaid from the proceeds of the sale of the home, there is nothing in the record to indicate that the loan was secured by the home or that it was involved with the home at all. The decisions of the circuit court on the reimbursement to Warren and repayment to Eileen are reversed and the cause is remanded for determination of these issues. The claims of the parties thereon can thereby be fully litigated on remandment. We are mindful that this will likely further deplete the assets of the estate beyond that which has already been accomplished by the parties' own unfortunate litigiousness. Given the circumstances, however, such remandment is the appropriate procedure.
The judgment of the Circuit Court of La Salle County is reversed in part and affirmed in part and the cause is remanded to the circuit court for further proceedings in accordance with the views expressed in the opinion in this case.
Reversed in part and affirmed in part.
SCOTT and BARRY, JJ., concur.