*In re* ESTATE OF BERTHA M. MARTIN, Deceased (Phyllis Joanne Nickelson, Ex'r, Respondent-Appellee, v. Douglas Olivero *et al.*, Petitioners-Appellants).

Fourth District   No. 4—87—0284

Opinion filed November 19, 1987

Louis E. Olivero, of Peru, for appellants.

Joe Hedge and L. Keith Hays, Jr., both of Monticello, for appellee.

JUSTICE GREEN delivered the opinion of the court:

This appeal concerns the estate of Bertha M. Martin, who died July 2, 1983. On July 10, 1983, the circuit court of Piatt County admitted her will to probate and appointed her daughter Phyllis Joanne Nickelson executor. The will devised certain tracts of land to a trustee for the benefit of that daughter and her family. Three other tracts were respectively devised to (1) her daughter Imogene Smith; (2) her daughter Berentha Laverne Connell; and (3) her grandchildren Douglas, David, Philip, and Marcia Olivero, children of her living daughter, Mary Louise Olivero, in equal shares. The residue was devised in equal shares to Smith, Connell, and Nickelson *per stirpes*.

This appeal is taken by the Olivero children from an order entered on February 3, 1987, ruling upon a petition of the executor filed July 11, 1986, in the course of the administration of the estate and entitled "Petition In Respect of Apportionment of Costs of Administration and Estate Taxes." The legal issues presented concern the circuit court's determination of: (1) whether sufficient assets were available in the residue of the estate to pay the foregoing items; (2) if such assets were not available, in what manner should responsibility to make

those payments be apportioned against the various devisees; and (3) whether, in any event, a certain portion of Federal estate taxes should be apportioned against the devise to the Olivero children, because only they had refused to have their property evaluated, for estate tax purposes, by the "qualified use" method (26 U.S.C. §2032A (1982)) which evaluation would have substantially reduced the tax burden upon the estate. We hold that several findings by the circuit court were proper but that further hearing is necessary to determine whether a shortage existed in the residue. We affirm in part, reverse in part, and remand with directions.

More particularly, the order appealed ruled (1) prior to payment of estate taxes and costs and expenses of administration, the residue had a value of $152,423.91; (2) the agreed amount to discharge those obligations was: (a) costs of administration, $47,827.41, (b) Federal estate taxes, $177,068.98, and (c) State inheritance taxes, $24,395.65, for a total sum of $249,292.04; (3) the deficit was, thus, $96,868.13; (4) of that deficit, the sum of $35,425.65 was apportioned against the devise to the Olivero children, because their refusal to accept the "qualified use" method of evaluation enhanced the total Federal estate taxes assessed against the estate; (5) the balance of the deficit in the sum of $61,442.48 was apportioned against all the various devisees based upon the percentage which the evaluation of each devise bore to the total evaluation of all the devises; and (6) the income from the devised property during administration should be divided among the devisees in a manner not in dispute.

The court also found that acts of Nickelson and Connell, in advancing funds for deposit in the executorship account, which they had received from savings accounts which, at the time of the decedent's death stood in the name of the decedent and one or both of them, did not negate their right to be reimbursed from the estate for those funds. This determination was significant because, if reimbursement was not required, the residue of the estate would have been sufficient to pay all charges against the estate.

The major dispute between the parties concerns the previously mentioned savings accounts. On July 13, 1983, those accounts, in the name of decedent, Nickelson, and Connell, had a principal and interest balance of $91,507.18. Those in the names of decedent and Connell had such a balance of $50,670.04 and those in the names of decedent and Nickelson had such a balance of $145,465. Neither the petition for probate of the will nor the inventory gave any indication that those accounts were considered to be assets of the estate, but reports and accounts filed with the court showed these funds as re-

ceived by the executor without any designation which required reimbursement for those funds. The Oliveros contend that these accounts were assets of the estate, because they were set up by or on behalf of the decedent with her funds and without any intent on her part to create rights of survivorship in the daughters listed as coowners. The circuit court held that this issue was not properly before the court. The Oliveros maintain that it was and should have been decided in their favor.

The Oliveros also complain of the circuit court rulings that (1) a substantial deficit existed in the residue of the estate because Nickelson or Connell were entitled to be reimbursed for the sum of $286,007.38 which they had advanced to the estate; and (2) because of this deficiency, the Oliveros' devise was to have apportioned to it an additional charge of $35,425.65. The amount of that apportionment was based upon the added Federal estate taxes imposed upon the estate because of the election of the Oliveros not to use the "qualified use" formula in evaluating the tract devised to them.

We consider first the question of the ownership of the savings accounts standing in the name of decedent and Nickelson or Connell, or both of them, at the time of the decedent's death. No responsive pleadings were filed to the petition seeking apportionment. Accordingly, the parties agreed that after the hearing on the petition was over, they would present to the court a written agreement as to the issues to be decided by the court. This was done, and the court took the matter under advisement. In reaching its decision, the court concluded that the question of whether the decedent had "donative intent" in setting up the accounts and intended to create rights of survivorship in her daughters was not before the court, and it declined to decide that question.

The agreement which purported to define the issues did so in these words:

"A. Whether or not under the terms of the will or as a matter of law the Federal estate tax is a charge against the residuary estate.

If so, has the residuary been exhausted?

That question depends upon whether or not the action of Laverne Connell and Phyllis Joanne Nickelson in depositing funds to an estate bank account constituted a contribution to the residuary estate and a waiver of any interest in these funds.

B. Whether the action of the executor in paying the Federal estate tax constitutes a waiver of the right to contribution by

the specific bequests?

C. If there is a right to apportionment and contribution then;

■ What is the proper method by which the amount the Estate tax exceeds the residuary should be apportioned among the specific bequests.

a. Whether it should be apportioned by charging the Olivero tract with the amount by which the Federal estate tax was increased by virtue of the election not to take special use valuation plus its pro rata share of the original tax; or

b. Whether the total tax should be apportioned among the specific bequests; and

c. Then, whether the Olivero tract should be credited with the net income of operations after assigning a pro rata share of all estate income tax liabilities or only that portion of tax liability computed as though the farm income were the only income of the estate.

■ Non-probate and probate assets."

The last line was handwritten by pen. The Oliveros maintain that the agreement did not eliminate the issue of whether Connell and Nickelson had survivorship rights in the accounts.

■ Absent the preclusion of the issue by stipulation, the question of whether the decedent had "donative intent" in creating the accounts would have been before the court because it bore on the question of whether the residue of the estate was deficient to meet the charges involved. The parties do not dispute that, in order for a stipulation of the parties to remove a material issue from a case, the stipulation must contain the clarity necessary to support a contract. (*In re Estate of Moss* (1969), 109 Ill. App. 2d 185, 248 N.E.2d 513.) Section A of the agreement does appear to limit the question of whether there is a deficit in the residue to the question of whether the advancements by Connell and Nickelson were "contribution[s] to the residuary estate and a waiver of any interest in [those] funds." However, the question of whether Connell's and Nickelson's furnishing of funds was a "contribution" is based in part on a determination of whether those funds belonged to Connell and Nickelson or were assets to which the estate was entitled. The agreement thus contains some ambiguity.

Because of the ambiguity in the agreement, we deem the following matters of record to be significant. The agreement states nothing about apportionment of the expenses of administration or State

inheritance taxes, yet those items contributed to the deficit which required the apportionment. During the hearing, evidence was introduced by the Oliveros, without objection by the executor as to its materiality, which bore only on the question of the decedent's "donative intent" in the creation of the savings accounts. Thus, matters not provided for in the agreement were treated as being in issue.

■■ While contending at oral argument before this court that the circuit court properly declined to consider the question of "donative intent," the executor stipulated that the issue of whether the accounts in question provided for rights of survivorship in the decedent's daughters could still be raised in some other proceeding. We do not see how a proper apportionment of charges arising by deficiencies in the residue can be properly and effectively made until the ownership of the proceeds of the accounts is decided. Accordingly, because of the uncertainty as to the coverage of the agreement, the treatment by the parties and the court of matters not strictly included within the wording of the agreement, and the need for a determination of the question of ownership of the savings accounts before making apportionment, we hold that the order appealed must be reversed, and the cause remanded to the circuit court for a further hearing to determine the question of ownership.

The Oliveros maintain that the evidence they presented conclusively proved that the decedent's daughters had no right of survivorship. We need not pass on that question because, in view of the uncertainty as to whether that issue was before the court at the prior hearing, fairness to the estate requires that each side have an opportunity to present evidence on the issue under circumstances where it is clear that it is to be decided by the court.

We find no substantial error in the decisions actually made by the circuit court. We agree that, if the decedent's daughters were entitled to the proceeds of the savings accounts, they are entitled to reimbursement for the money they advanced. We also agree that apportionment of the additional estate taxes resulting from the Oliveros' declining to adopt a "qualified use" valuation for their devise was proper.

■■ We consider next the court's ruling that, assuming the ownership in Nickelson and Connell of the savings accounts, they were entitled to reimbursement for their advancements, and the residue was, thus, deficient to make the required payments for expenses of administration and taxes. The evidence showed that the proceeds from those accounts were eventually advanced to the estate by Connell and Nickelson and were received without any evidence of indebtedness is-

sued by Nickelson in her capacity as executor. Her arrangements with Connell in regard to repayment were entirely oral. The Oliveros maintain that Nickelson and Connell have no right to be reimbursed, even if the funds advanced were theirs, because Nickelson, as executor, had no authority to make a contract on behalf of the estate "originating with" herself. They cite *Thomas v. Gouwens* (1975), 25 Ill. App. 3d 663, 323 N.E.2d 829, where the opinion indicated that such a rule limited the authority of personal representatives to bind an estate.

We need not examine the question of the power of the executor to contract on behalf of the estate. Money was advanced to the estate by Nickelson and Connell. No provision was made for the estate to pay interest to them, and they claim none. Nothing in the record indicates that, at the time these advancements were made, either the estate or any beneficiary under the will was making claim that the estate was entitled to these funds. The evidence shows that they advanced the money under a belief that they would be reimbursed. Under such circumstances, they would be entitled to restitution for the principal amount advanced even if the executor had no power to contract to do so. To hold otherwise would permit the estate to be unjustly enriched. *Board of Trustees v. Village of Glen Ellyn* (1949), 337 Ill. App. 183, 85 N.E.2d 473.

In *Levi v. Stern* (1944), 324 Ill. App. 82, 57 N.E.2d 228 (abstract of opinion), the court held that beneficiaries of an estate could not complain of the conduct of an executor who advanced to the estate funds which the executor had personally received under a bequest. The funds had been used to benefit the estate by the payment of property taxes, thus preserving the estate. Reimbursement was held to be proper. Here, the sums advanced were also used for the benefit of the estate by the payment of estate taxes. The Oliveros maintain that the situation was different here, because the funds advanced did not come from a bequest. The difference is not material. The crucial aspects of the advancement are that the estate was benefitted and no special benefit, such as earning of interest, accrued to Nickelson or Connell. If the funds were the property of Nickelson and Connell, fairness required that they be entitled to reimbursement. The portion of the order ruling that advancements could properly be refunded is affirmed.

■■ ■ Finally, we examine the Oliveros' contention that the apportionment against their devise was error. They do not dispute that, when the residue is insufficient to pay Federal estate taxes, those taxes may be apportioned against the other gifts made by the will. They assert that here, however, the residue was sufficient and, in any

event, the method of apportionment was improper. We have already held that unless a sufficient portion of the funds from the savings accounts standing in the name of the decedent and her daughters are determined to be assets of the estate, a deficiency does exist in the residue. Therefore, we turn to the question of the nature of the apportionment made.

The various States have power to determine the manner in which Federal estate taxes may be apportioned among those who benefit by the taxable event. (*Riggs v. Del Drago* (1942), 317 U.S. 95, 87 L. Ed. 106, 63 S. Ct. 109.) In *Roe v. Estate of Farrell* (1978), 69 Ill. 2d 525, 372 N.E.2d 662, the supreme court held that those taking joint tenancy property by right of survivorship under circumstances creating a taxable event must bear a proportionate share of the estate taxes of an *intestate* estate involved. Then, in the case of *In re Estate of Gowling* (1980), 82 Ill. 2d 15, 411 N.E.2d 266, that court made two holdings of precedential value here. One was that in a *testate* estate, upon exhaustion of the residue, the burden of estate taxes may be apportioned against both the devisees and the legatees and nonprobate property in regard to which the death of the testator was a taxable event. The court also held that no apportionment could be made against the property given by the will to the surviving spouse to the extent that property qualified for the marital deduction.

Thus, here, assuming the correctness of the determination that the residue was exhausted, apportionment of the deficit against the Oliveros' devise was proper. The cases have not stated the exact manner in which the apportionment must be made. However, the *Gowling* court, in immunizing the marital deduction property of the surviving spouse from apportionment because it did not contribute to the incursion of the tax, indicated the contribution of property devised or bequested to the creation of the Federal estate tax liability is a proper element upon which to base apportionment.

■ By subjecting the property devised to them for the lower "qualified use" valuation, the devisees other than the Oliveros substantially limited the use which could be made of the property for the subsequent 10 years without incurring additional tax. (26 U.S.C. §2032A(c) (1982).) To avoid the additional tax, the land was required to be used for farming or in a trade or business (26 U.S.C. §2032A(b)(2) (1982)) and could not be disposed of to other than a member of the devisee's family (26 U.S.C. §2032A(c)(1)(A) (1982)). Those reducing the estate tax by accepting the "special use" valuation also took on the detriment of accepting a lower cost basis for that property. This would cause them to incur greater income tax

upon a subsequent sale at a profit. Thus, apportioning the deficit of the residue against the Oliveros based upon the increased estate tax liability incurred because of their refusal to accept the "special use" valuation was proper.

We do note one infirmity in the formula used to apportion the Olivero tract its fair share of the deficit in the residue. The court first determined the amount by which the estate taxes were increased because the Oliveros elected to take a valuation of $180,000 rather than a lower "special use" valuation. The court concluded that sum to be $35,425.65. The court then divided the remainder of the deficit in the residue among the various parties upon the basis of the relationship of the value of the property they received and the total value of the taxable estate. In doing this, the court used the full valuation of the Olivero tract of $180,000. The proper figure should have been the valuation that would have been used had the "special use" valuation been elected. The $35,425.65 figure was used to apportion the cost to the estate because of the use of that high figure. After that had been done, the Oliveros should have been charged only with that which they would have had to pay if the "special use" valuation had been adopted. This should be corrected upon remand even if the court determines that no proceeds from the savings accounts belong to the estate.

■ In the event that upon remand the court determines that the residue is adequate to pay the administration expenses and taxes involved, no apportionment of those items should be made against the Oliveros based on their refusal to adopt a "special use" valuation. The general rule has been established and has prevailed which requires that, as between those taking under a will, the burden of estate taxes is placed on the residue absent express provision to the contrary in the will or legislation so providing. (*First National Bank v. Hart* (1943), 383 Ill. 489, 50 N.E.2d 461.) In the case of *In re Estate of Gowling* (1980), 82 Ill. 2d 15, 411 N.E.2d 266, the supreme court made clear that apportionment there among those taking under the will was permissible only to the extent that the residue was exhausted. The theory is that the testator must have intended recipients of gifts specifically named to be taken care of ahead of residuary legatees regardless of what would otherwise appear to be a fair allocation of the Federal estate tax liability.

As we have indicated, we affirm the determination of the circuit court that (1) Nickelson and Connell are entitled to reimbursement from the estate for advancement of any sums of money which was theirs; (2) if the residue was insufficient to pay the described expenses

of administration and taxes, apportionment may be made against devisees including the Oliveros; and (3) if any such apportionment is made against Oliveros, it can be partially based upon the added tax liability imposed upon the estate because of their election not to seek a "qualified use" valuation for their devise. Otherwise, the order is reversed, and the case remanded to the circuit court of Piatt County for further proceedings as directed herein. At such proceeding, the court may permit or order such further pleadings as deemed desirable and shall hear further evidence.

Affirmed in part, reversed in part, and remanded with directions.

LUND and KNECHT, JJ., concur.