*In re* ESTATE OF BERTHA M. MARTIN, Deceased (Douglas Olivero *et al.*, Devisees-Appellants, v. LaVerne M. Connell *et al.*, Respondents-Appellees).

Fourth District   No. 4—89—0978

Opinion filed August 30, 1990.

Louis E. Olivero, of Peru, for appellants.

L. Keith Hays, Jr., of Monticello, for appellee Estate of Bertha Martin.

Garry W. Bryan, of Clinton, for appellees Laverne M. Connell and Joanne Nickelson.

JUSTICE GREEN delivered the opinion of the court:

This appeal is a continuation of a dispute concerning whether devisees under a will should be required to pay money to the estate to cover payment of expenses of administration and Federal estate taxes. The dispute was previously before us in the case of *In re Estate of Martin* (1987), 162 Ill. App. 3d 638, 515 N.E.2d 1312 (*Martin I*). The decedent died July 2, 1983. Her will was admitted to probate by the circuit court of Piatt County on July 10, 1983. A daughter, Phyllis Joanne Nickelson, was named and has served as executor. During the course of administration, on July 11, 1986, the executor filed a petition to require advancement by the devisees of sufficient funds to pay the foregoing expense and taxes. After a hearing, the circuit court entered an order on February 3, 1986, finding the amount of a deficit which existed and providing for contribution by the devisees.

Among the devisees are Douglas, David, Philip, and Marcia Olivero (Olivero devisees). They are the children of Mary Louise Olivero, a daughter of the decedent who took nothing under the will.

However, the Olivero devisees received, in equal undivided shares, a tract of the decedent's farmland. The February 3, 1983, decree ordered them to pay a high rate of reimbursement because an option they took in regard to the valuation of their land for Federal estate tax purposes increased the total liability of the estate for those taxes. Upon their appeal, this court affirmed the general method for calculating reimbursement set forth in that decision. (*Martin I*, 162 Ill. App. 3d 638, 515 N.E.2d 1312.) This court also held the question of whether a deficit existed requiring assessment of devisees could not be determined until a dispute as to whether various joint bank accounts standing in the name of the decedent and either Nickelson, Berentha Laverne Connell (another daughter of decedent), or both, were assets of the estate or of the two daughters.

The cause was remanded to the circuit court to determine the rights to those accounts. After a hearing, the circuit court entered an order on November 16, 1989, finding Nickelson and Connell entitled to the money represented by those accounts and thus finding the existence of a deficit. That order then ordered reimbursement to the estate by all the devisees pursuant to the provisions of the prior order affirmed in *Martin I*.

The Olivero devisees have appealed, asserting (1) the court erred in not finding a fiduciary relationship to have existed between the decedent and Nickelson and Connell vitiating any gift by the decedent to them of any interest in the purported joint accounts; (2) the court erred in not placing a burden on Nickelson, as executor, to explain why she listed the purported joint accounts as assets of the estate in earlier accounts but did not so list them in her last account; (3) the record clearly and convincingly established lack of donative intent on the part of decedent in setting up the purported joint accounts; (4) the court erred in denying admission into evidence of a letter written by a former counsel for the executor; and (5) counsel for the executor had a conflict of interest which should have caused him to withdraw from the case. We affirm.

Some of the evidence concerning the rights in the joint accounts is undisputed. Prior to decedent's death, nine such accounts were created with the decedent and Nickelson or Connell or both listed as joint owners. Neither Nickelson nor Connell contributed any money to the accounts and neither ever made any withdrawals. Neither had possession of any of the passbooks until Nickelson was appointed executor. The first account was created on March 3, 1979, when the decedent went to her bank with Connell and purchased joint money market certificates in the face amount of $30,430.80. Connell was

named as a joint owner with decedent. On April 6, 1979, a similar transaction occurred whereby decedent purchased another money market certificate in the sum of $23,387.24 in her name and Nickelson's. In April 1980, the decedent executed her will and gave it to Nickelson for safekeeping. Thereafter, seven other such accounts were created before the decedent died.

After the decedent died, Nickelson and Connell redeemed the certificates and created a "jumbo" savings account at the same bank in the name of Nickelson as executor of decedent's estate. This account was in the sum of $215,687.35. Both Nickelson and Connell testified this money was advanced to the estate to enable the estate to make payments for expenses of administration and estate taxes but with an understanding between them they would ultimately be reimbursed from the estate. However, various statements of account made by the executor refer to the "jumbo" account as an asset of the estate without any statement of liability upon the estate to reimburse Nickelson and Connell for advancing that money. Then, the last account of the executor made no listing of the "jumbo" account. The Federal estate tax return for the estate treated the funds from the joint accounts in a similar manner. Interest on the "jumbo" account was treated on a tax return as interest earned by the estate. No gift tax return was ever filed by the decedent or her estate with reference to the creation of the various joint accounts.

Two well-recognized presumptions concerning gifts of property by one person to another are asserted by the parties. The various joint accounts here were apparently created pursuant to the provisions of section 2 of "An Act to revise the law in relation to joint rights and obligations" (Ill. Rev. Stat. 1977, ch. 76, par. 2), which concerns joint rights in personalty. When a joint savings account is created pursuant to the terms of section 2, a presumption arises that one who furnishes the funds for the account *intends to make a gift* to the other persons who are designated as owners of the account. (*Murgic v. Granite City Trust & Savings Bank* (1964), 31 Ill. 2d 587, 202 N.E.2d 470; *Frey v. Wubbena* (1962), 26 Ill. 2d 62, 185 N.E.2d 850.) This presumption can be overcome only by clear and convincing evidence. (*Murgic*, 31 Ill. 2d 587, 202 N.E.2d 470; *Frey*, 26 Ill. 2d 62, 185 N.E.2d 850.) On the other hand, when a gift is made by one person to another who owes a fiduciary duty to the donor, that gift is presumptively fraudulent. (*Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 448 N.E.2d 872.) That presumption also can only be overcome by clear and convincing evidence. *Franciscan Sisters*, 95 Ill. 2d 452, 448 N.E.2d 872.

■ The Olivero devisees maintain the creation of the various joint accounts was flawed both because of (1) constructive fraud in breach of a fiduciary relation owed to the decedent by Nickelson and Connell; and (2) a lack of donative intent by the decedent when creating the accounts. Accordingly, the two presumptions might be seen as being in conflict. When such a conflict exists, the presumption of validity referred to in *Murgic* and *Frey* has been held to prevail over the presumption of fraud arising from a fiduciary relationship. (*In re Estate of Copp* (1971), 132 Ill. App. 2d 974, 271 N.E.2d 1; *In re Estate of Foster* (1969), 104 Ill. App. 2d 447, 244 N.E.2d 620.) Here, we need not decide whether the *Murgic* presumption prevails over the presumption arising from a fiduciary relationship. We conclude the finding that no fiduciary relationship existed between either Nickelson or Connell and the decedent was not contrary to the manifest weight of the evidence.

In seeking to establish a fiduciary relationship between Nickelson and Connell and the decedent, the Olivero devisees rely on evidence that (1) in 1980, after executing her will, the decedent gave the will to Nickelson for safekeeping; (2) from May 19, 1983, until the decedent's death on July 2, 1983, she was confined in a hospital suffering from terminal cancer and part of the time attached to a machine to prevent her from vomiting; and (3) on June 13, 1983, either Nickelson or Connell took appropriate forms to decedent whereby decedent created an additional money market joint account in the sum of $91,443.50 in her name and the names of those two daughters. The Olivero devisees assert the combination of the age and eventual illness of the decedent when combined with the confidence and trust she placed in Nickelson and Connell required the circuit court to find a fiduciary relationship existed between them.

The Olivero devisees rely on the case of *Kester v. Crilly* (1950), 405 Ill. 425, 91 N.E.2d 419. There, the supreme court upheld a determination of the existence of a fiduciary relationship between a father and daughter when (1) they lived together; (2) he was crippled, paralyzed, and had difficulty in talking; and (3) she, with a sister, had taken his pension checks together with their paychecks and placed them in a joint account from which they paid household expenses. Here, neither daughter lived with the decedent though Connell lived in close proximity. Except for the related participation of Nickelson and Connell in the creation of certain of the joint accounts and Nickelson's keeping decedent's will, the record does not reveal any evidence of these daughters otherwise handling business transactions for decedent. The decedent's sister testified the decedent appeared to be

of sound mind up to the last and capable of handling her business. The evidence fell well short of that which would have required the circuit court to find a fiduciary relationship existed.

The Olivero devisees' assertion they are entitled to a new trial or other relief because Nickelson, as executor, was under some duty to explain the disparity in treatment of the joint accounts in her accounting of her acts as executor is based on the case of *In re Estate of Murphy* (1987), 163 Ill. App. 3d 380, 516 N.E.2d 664. There, a decedent had created joint bank accounts in proper statutory form naming her son as joint owner. That son's wife became the decedent's executor. During the administration of the decedent's estate, the executor filed several accounts listing the joint accounts as assets of the estate and then filed a final account making no mention of the joint accounts. Another son, a residual legatee, objected to the final report but, without explanation, the court approved that report. The appellate court reversed, holding the executor had the burden of explaining the discrepancy.

Notably, *Murphy* did not concern the establishment of the right of the purported joint owner of the accounts to succeed to full ownership of the accounts upon the death of the co-owner. Rather, the case involved the question of whether the executor had discharged her duties. The decision indicated the executor had the burden of going forward to explain a discrepancy in the accounts. The rule established was that in the absence of any evidence concerning the discrepancy, the executor should not have been discharged. Other than describing the situation when no evidence was presented, the opinion did not touch upon the subject of presumptions. The decision is of little help to us in deciding whether the circuit court erred in not determining the joint accounts belonged to the estate.

We are now set to confront the closest question in the case. That is whether the circuit court erred in determining the presumption the decedent intended to make gifts to Nickelson and Connell was not rebutted by clear and convincing evidence. In maintaining the evidence did so, the Olivero devisees rely principally on *In re Estate of Denler* (1980), 80 Ill. App. 3d 1080, 400 N.E.2d 641, and *In re Estate of Guzak* (1979), 69 Ill. App. 3d 552, 388 N.E.2d 431, both of which state often repeated criteria bearing upon whether that presumption has been rebutted.

In *Denler*, three certificates of deposit standing in the name of a decedent and her daughter were found by the trial court to be an asset of the decedent's estate. The appellate court affirmed, holding the presumption of intent had been properly rebutted. Until her fatal

stroke, the decedent had at all times kept control of the certificates and the daughter had made no contribution to them. The daughter admitted she had no control over the accounts during the mother's life and that they were to be used for her mother's care when she was sick. Evidence indicated the mother had told the daughter the daughter would have to care for her when she got old. A power of attorney executed by the mother indicated she considered the joint certificates were hers. The court noted that evidence in support of the daughter's claim was the daughter's testimony that her mother told her the certificates were to be hers when her mother died. However, the court stated that testimony was inconsistent with testimony in a discovery deposition the daughter had given.

In affirming, the *Denler* court quoted language from *Guzak* as follows:

> " 'The transfer of personal property into joint tenancy by a father with the right of survivorship in his son creates a presumption of a valid gift to the son as the surviving joint tenant. [Citations.] The presumption is not conclusive but the burden is upon the one who challenges the gift to present clear and convincing evidence of the absence of a donative intent. [Citations.] In determining whether the donor actually intended to transfer his interest in the account at his death to the surviving joint tenant, it is proper to take into consideration the facts surrounding the creation of the joint account ***. [Citations.] Especially relevant to such a determination is the exercise of authority and control over the joint account. [Citations.] The fact that the surviving joint tenant did not consider himself as having any ownership in the account may be considered in determining the intent of the creator of the account. [Citations.] Evidence that the transfer was made for the mere convenience of the creator of the account is an indication of lack of donative intent. [Citations.] Another factor to be considered is the quantity of personal property involved in comparison to the total assets of the estate. [Citations.]' [*Guzak*,] 69 Ill. App. 3d 552, 554-55[, 388 N.E.2d 431, 433-34]." *Denler*, 80 Ill. App. 3d at 1087, 400 N.E.2d at 647.

In *Guzak*, the account in question had been held by the decedent for many years. First it was a joint account of the decedent and his wife. After her death, the decedent kept the account in his own name for 25 years. Then the decedent's son, who lived with the decedent, was made a joint tenant but decedent or his daughter had control of the passbook. Both the son and daughter made deposits to the ac-

count with decedent's funds but the son never made any withdrawals. Evidence was presented that shortly before his death decedent had pointed to a passbook for a trust fund of which the son was the named beneficiary and stated this was what he wanted the son to have. Evidence was also presented the son had admitted, after the father's death, he had no ownership of the account in question. The appellate court affirmed the circuit court's judgment awarding the purportedly joint account to the decedent's estate.

Here, unlike in *Denler* and *Guzak*, the decision to be made on review is whether to uphold a trial court determination that the presumption of donative intent *had not been rebutted*. In analyzing the question presented we must recognize that in their testimony both Nickelson and Connell admitted they had no right to use funds of the joint accounts during the decedent's lifetime. Rather, they maintained they had a right to use the funds only after the decedent's death.

The restriction against their use of funds during the decedent's lifetime did not destroy their claim to the funds. In *Johnson v. La Grange State Bank* (1978), 73 Ill. 2d 342, 383 N.E.2d 185, consolidated appeals included an appeal from the decision of this court in *Havey v. Patton* (1977), 52 Ill. App. 3d 897, 368 N.E.2d 728. There, an estranged wife created several joint accounts with her sister-in-law with the understanding the sister-in-law would not draw on them during the donor wife's lifetime. The wife was terminally ill at the time and did not want her estranged husband to have the money in the account. The supreme court affirmed a decision of this court affirming a circuit court decision upholding the surviving joint tenant's right to the accounts against the decedent's estate. The focus there was mostly upon the question of whether the decedent's actions constituted a fraud on her husband. However, in writing for the court, Justice Ryan gave an explanation valuable here when he stated:

"The fact that Mrs. Havey contributed all the funds to the accounts and retained the right to withdraw them does not negate the existence of donative intent required to validate a gift. (*Frey v. Wubbena* (1962), 26 Ill. 2d 62, 71-72[, 185 N.E.2d 850, 856].) Thus, as far as the present case is concerned, we do not believe that Mrs. Havey's right to use the funds, or her direction that her sister-in-law have no immediate use of the funds, demonstrates a lack of donative intent. Rather, where joint accounts are concerned, the creation of the joint tenancy accounts is evidence of donative intent and is sufficient to establish ownership in the survivor upon the death of the original owner, in absence of evidence to the contrary. *In re Estate of Schneider*

(1955), 6 Ill. 2d 180, 187[, 127 N.E.2d 445, 449]; *Frey v. Wubbena* (1962), 26 Ill. 2d 62, 72[, 185 N.E.2d 850, 856]." *Johnson*, 73 Ill. 2d at 368, 383 N.E.2d at 197.

As we have explained, Nickelson, acting in her capacity as executor, treated the joint accounts inconsistently and in ways which would tend to negate they belonged to Connell and her. However, both Nickelson and Connell testified that they had an agreement to put the proceeds of the accounts in the account of the estate for use in paying expenses of administration and estate taxes with reimbursement to be made to them. The circuit court heard this testimony and had the opportunity to see them as they testified. The testimony was worthy of belief and explained, to some extent, the discrepancies in the way that money was treated in various accounts and tax returns.

In examining the circumstantial evidence in this case we find nothing which is dispositive. Nickelson and Connell had no use of the funds during decedent's lifetime and never had control of the passbooks. However, this is entirely consistent with their position that they had no right to withdraw from the accounts during the life of the decedent. The accounts were in large amounts and the record is not clear as to whether the decedent herself ever withdrew from them. If the decedent used other monies to pay her expenses, that would tend to negate an intention the joint account was for convenience. The fact that Nickelson did not live in Illinois also tended to negate an intent upon the decedent to set up joint accounts with her for convenience.

On June 13, 1983, while decedent was on her deathbed and 2½ weeks before she died, decedent did create joint accounts in the sum of $91,443.56 leaving only $611.92 in her other accounts. This action bore some indication of being for the decedent's convenience. However, she had not had the other joint owners draw for her on the other joint accounts and they were still available to use for her medical expenses. Thus, the totality of the circumstances also supports an intent on her part to make a gift to Nickelson and Connell. This inference was supported by the testimony of a sister of the decedent who stated the decedent felt she had done less during her lifetime for Nickelson and Connell and told the sister she wanted to do something for them. The sister also testified decedent was concerned with Connell's health.

■ Based upon the evidence, the circuit court could properly determine the presumption of donative intent upon the part of the decedent was not clearly and convincingly shown to be rebutted. A further complication arises from our decision in the case of *In re Estate of Lewis* (1990), 193 Ill. App. 3d 316, 549 N.E.2d 960. There, we held

the bursting bubble theory of presumptions applied to the presumption of donative intent set forth in *Murgic* and *Frey*. In *Franciscan Sisters* the court had stated the bursting bubble theory applied generally to presumptions in civil cases.

■ Under the bursting bubble theory, if the underlying facts giving rise to the presumption are proved, the party against whom the presumption operates must produce sufficient evidence to refute the presumption. The strength of the proof necessary to refute the presumption depends on the nature of the presumption. (*Franciscan Sisters*, 95 Ill. 2d 452, 448 N.E.2d 872.) As with the presumption of fraud arising from a gift to a fiduciary, the proof to refute a presumption of donative intent must be clear and convincing. (*Lewis*, 193 Ill. App. 3d 316, 549 N.E.2d 960.) This case was decided before *Lewis* and the record does not indicate whether the court applied the bursting bubble theory here. However, that makes no difference because the court's determination of the lack of rebuttal proof prevents the bubble from bursting.

The decision of the circuit court on the issue of donative intent was supported by the evidence.

■ A former attorney for Nickelson wrote to the attorney for the Olivero devisees on February 24, 1984, stating, in part, "It was [decedent's] intention that the funds she accumulated and which were jointly held are to be applied to the payment of all taxes and the cost of administration." The Olivero devisees offered this portion of the letter in evidence and the trial court refused the offer. The apparent purpose of the offer of proof was that the statement constituted an admission of a party opponent. However, the opponents of the Olivero devisees in regard to the instant dispute were Nickelson and Connell in their individual capacities. The record does not indicate the writer of the letter ever represented Nickelson and Connell individually in regard to the dispute over the joint accounts. The interest of the estate would be served by having her accounts as assets of the estate. Thus, an admission by the estate that the joint accounts should be part of the estate is not an admission of Nickelson or Connell as individuals.

We have concern with whether a letter of this nature, by an attorney, would be admissible as an admission of the attorney's client even if the client and the one seeking to use the admission were in opposing positions. However, that is a complicated question and we need not answer it here.

■ Finally, the Olivero devisees seek reversal and a new hearing on the theory that counsel for the executor had a conflict between

representing the interest of the estate, which would be enhanced by the joint account money being part of the estate, and the individual interest of the executor which would be served by upholding the validity of the joint accounts. Clearly, at all times after prior remand, separate counsel have represented the interests of the estate and those of Nickelson and Connell as individuals. Moreover, the Olivero devisees have had the opportunity to fully present their theory that the joint accounts are assets of the estate. Nothing has been called to our attention which would require reversal of the order on appeal because of any conflict of counsel.

As we have indicated and for the reasons stated, we affirm.

Affirmed.

LUND and STEIGMANN, JJ., concur.